## H. S. SARGENT *v.* JOSEPH M. CAVIS, JUDGE OF THE FIFTH JUDICIAL DISTRICT OF THE STATE OF CALIFORNIA.

EXPENSE OF WITNESS ON BEHALF OF PEOPLE.—The District Court has jurisdiction, when a witness is poor, or has come from a place out of the county, and has attended as a witness on behalf of the People, to make an order directing the County Treasurer to pay the witness a sum to be named in the order, for his expenses.

IDEM.—If the venue of such action is changed, the order should direct the sum allowed to be paid by the Treasurer of the county where the indictment was found.

CONTEMPT OF COURT.—The Treasurer cannot be punished for contempt for not obeying an order of Court directing him to pay money to a witness for expenses, without some proceeding to which the Treasurer is made a party.

ORDER OF COURT TO PAY WITNESS.—The question whether an order made by the Court for a County Treasurer to pay a witness his expenses should be presented to the Board of Supervisors, to have the sum therein allowed audited by them, before the Treasurer is compelled to pay the same, not decided.

IN the Supreme Court of the State of California.

The plaintiff, Sargent, was the Treasurer of San Joaquin County, and was directed by the order to pay the sums allowed to the various witnesses. The defendant was the District Judge of the Fifth Judicial District, which included San Joaquin County. The plaintiff applied to this Court for a writ of *certiorari* to reverse the order of the District Court.

The other facts are stated in the opinion of the Court.

*W. L. Dudley*, and *J. H. Budd*, for Plaintiff.

The orders referred to in petition of Sargent were made under section five hundred and fifty-six of an "Act to regulate proceedings in criminal cases," passed May 1st, 1851.

April 29th, 1851, an Act was passed concerning costs of criminal actions removed before trial; and by section one of that Act such costs were to be a charge against the county in which the indictment was or may be found.

March 20th, 1855, the Legislature passed an Act providing for the creation of a Board of Supervisors in the counties of the State, and conferred on said Board power to examine, settle, and allow all accounts legally chargeable against the county.

By the Act of April 2d, 1857, page one hundred and sixty-seven, all unaudited claims against a county were to be presented to the Board of Supervisors.

By the Act of 1864, page one hundred and fifty-two, no unaudited claim or demand was thereafter to be approved, allowed, or paid out, by any County Treasurer, etc.

By the Act of April 2d, 1866, page eight hundred and thirty-six, no person shall sue a county for any demand unless first presented to the Board of Supervisors for allowance, etc.; and by the Act of 1854, page one hundred and ninety-four, suits for and against a county must be by and in the name of the county.

If the witnesses in the order mentioned were entitled to the money directed to be paid them, it must have been on the ground that they had primarily a claim against San Joaquin County; and such claim, in order to entitle it to be paid, must have been presented, properly verified, to the Board of Supervisors of said county. (See statutes above referred to.) These statutes repeal the section on which the orders were made, and that not by implication. They are not simply directory, but are mandatory, and all conflicting statutes passed prior thereto must be considered repealed.

If the latter Acts are law, the former conflicting Act must give way.

The Court which made the order had no jurisdiction of the person of Sargent, or of San Joaquin County. Sargent was not an officer of the Court. No process of the Court had been served on him, nor on the county, and Sargent found himself in the unpleasant position of having to obey an order made without his knowledge, to pay out the people's money or to be punished for contempt of Court.

No principle is better settled than this: The Court must have jurisdiction both of the subject of the action and of the person. The county should not be deprived of its property, even temporarily, without due process of law. (Const., Art. I, Sec. 8.)

Section five hundred and fifty-six of the Act of 1851 is plainly unconstitutional. The orders are in the nature of judgments against the county, to be enforced by the imprisonment of the County Treasurer in case he did not obey the order of the Court. The District Court was not the agent of the county to audit claims; the District Judge had no right to exercise the duties of any office other than a judicial office. (Const., Art. VI, Sec. 16; *Burgoyne* v. *Supervisors of San Francisco*, 5 Cal. 20; *Phelan* v. *Supervisors of San Francisco*, 6 Cal. 540; *Hardenberg* v. *Kidd*, 10 Cal. 403.)

*George Cadwalader*, for Defendant.

Repeals by implication are not favored, but restricted. (Smith on Construction of Statutes, Sec. 757.)

A general direction of a statute has to give way to a special one; and it will not be pretended that the Act of 1851, which is indispensable to the execution of the criminal laws of the State, should be repealed so as to give a Board of Supervisors authority to pass upon the claims of witnesses for compensation, or to take away all authority from the Court on the subject. (Smith on Construction of Statutes, Sec. 788; 9 Pickering, 87; 9 Cal. 571.)

Germane to this subject are the remarks of Sedgwick on Statutory and Constitutional Law, pages 123, 124, 126, 127.

The Criminal Practice Act must be regarded as a system framed to execute the criminal laws of the State; and before its directions and necessary policy can be deemed repealed or annulled, there must be clear words to such effect, or necessary implication to that end in the action of the Legislature.

By the Court, SAWYER, C. J. :

A. M. Swaney and Adelia Seale were indicted for murder in Mariposa County, and on their application the place of trial was changed to San Joaquin County. Several witnesses residing in the County of Mariposa attended the trial under subpœna. At the conclusion of the trial, on application of said witnesses, the Court made three several orders, allowing the witnesses so attending certain specified sums, amounting in the aggregate to something over one thousand two hundred dollars, and directing the County Treasurer of San Joaquin County to pay the same. The said orders have been brought up for review in pursuance of a writ for that purpose issued by this Court. It is claimed that the District Court exceeded its jurisdiction in making said orders.

Section five hundred fifty-six of the Criminal Practice Act of 1851 provides, that: "When a person shall attend before a Magistrate, Grand Jury, or Court, as a witness on behalf of the People, upon a subpœna, or by virtue of a recognizance, and it shall appear that he has come from a place out of the county, or that he is poor, the Court, if the attendance of the witness be upon a trial, by an order upon its minutes, or in any other case, the County Judge, by an order subscribed by him, may direct the Treasurer of the county to pay the witness a reasonable sum, to be specified in the order, for his expenses." And section five hundred fifty-seven provides, that "Upon the production of the order, or a certified

copy thereof, the County Treasurer shall pay the witness the sum specified therein out of the County Treasury."

Section five hundred fifty-six certainly authorizes the Court to make orders of the character of those in question. The language is very specific, and admits of no other construction. In this case all the conditions upon which the Court is authorized to act are found. We can perceive no constitutional objection to the provision. The taxation of costs, which includes the determination of the amount of the allowance made to witnesses, who, willing or unwilling, are required by the process of the Court to attend trials at a distance from their residences, in which they have no special or peculiar personal interest, is incident to every judicial proceeding, and the jurisdiction to hear and determine the principal case necessarily involves jurisdiction over all mere incidental matters. It is certainly competent for the Legislature to make the costs in proceedings for the general administration of the criminal law, in which the People are parties plaintiff, chargeable upon the people, either of the State at large, or of the county in which the proceeding originates, or is had. The county is but a subdivision of the State, adopted for the more convenient administration of the Government. The People, as plaintiffs, are parties to the action in which the allowance is made, and are heard through the District Attorney. The allowance is a judicial act, and when made in a case authorized by law, is conclusive upon the county.

It is insisted by respondent, that the section under consideration is repealed by implication by subsequent Acts— the Act of 1855, creating Boards of Supervisors of the several counties, and empowering them to examine, settle, and allow all accounts chargeable against a county; the Act of 1857, providing that unaudited claims against a county must be presented to the Board of Supervisors, etc.; the Act of 1864, providing that no unaudited claim or demand shall thereafter be paid out of the county treasury, unless such claim be presented, etc.; and the Act of 1866, pro-

hibiting a suit upon a demand unless first presented, etc. But there is no plain inconsistency between these provisions and section five hundred fifty-six of the Criminal Practice Act. The most that can be maintained with any appearance of reason, is, that the adoption of the new mode of managing the financial affairs and keeping the accounts of the counties thus provided, repeals or modifies, by implication, section five hundred fifty-seven, and not section five hundred fifty-six, of the said Act. It might be contended with some reason that the mode of obtaining money on demands established, out of the treasury of the county charged, has been changed; that, in order to give effect to a new policy adopted, in providing by means of several different officers certain checks, it has since been provided that money shall be drawn from the treasury in a certain mode, and that all demands, of whatever nature and however established, must go through the prescribed formula. Under this view it might be necessary, notwithstanding the order of the Court, to present the demand to the officers having charge of the finances of the county, and have it audited; but if this be so, the allowance of the Court would still be final and conclusive, and it would be the duty of the Board of Supervisors, or other auditing officers, to audit and allow it, and direct payment in the proper mode. Upon the Board of Supervisors is devolved the duty of providing the means to pay all proper items of expenditure, and they must know what they are, to enable them to do it. Even in this view, the Court, and not the Board of Supervisors, is the proper tribunal to determine the amount of allowance to be made to witnesses in cases tried before it, and when determined in the mode prescribed, the Board of Supervisors, and other auditing officers, would be bound to audit and allow the claims as thus established.

This branch of the question, however, is not before us; nor can we consider the suggestion that the Court is about to proceed to enforce the orders by process for contempt against the Treasurer, for we can only review on this record

what the Court has done already, and not what it is about to do hereafter. But no provision of the statute has been brought to our attention authorizing the enforcement of the allowance by summary process of contempt, without some other intermediate process, such as a proceeding for a mandate to compel him to perform a duty enjoined by law, to which the Treasurer himself is made a party.

But the Act of April 29th, 1851, (Stats. 1851, p. 185,) passed only two days before the Criminal Practice Act, provides that: "In *every case* where a criminal action may have been or shall be removed before trial, the *costs accruing upon such removal and trial shall be a charge against the county in which the indictment was or may be found.*"

"SEC. 2. The Clerk of the county to which such action is or may be removed shall certify the amount of said costs to the Auditor of his county, who shall audit the same and issue his draft therefor upon the Treasurer of the county from which such action was or may be removed."

The two Acts must have been before the Legislature at the same time. They are in *pari materia*, and must be read together, and thus read, it is manifest that where there has been a change of the place of trial, as in this case, the county in which the indictment is found, and not the county in which the trial is had, is the one to be charged with the payment of the costs. The second section in the last Act cited provides the mode of authenticating the amount and the means through which the treasury of the county chargeable is to be reached. It is not provided that the county where the trial is had shall in the first instance pay the allowance and then look to the other for reimbursement. Perhaps, now, it might be necessary to present the warrant so drawn, either with or without a certified copy of the Judge making the allowance to foreign witnesses to the Board of Supervisors of the county charged, in the mode provided for other demands. But the question has not been argued, and it is unnecessary to decide it now.

The indictment in this case was found in Mariposa

Points decided.

County, and the order should have been that the allowance be paid by the Treasurer of Mariposa County, and not the Treasurer of the County of San Joaquin. In this particular there was an excess of jurisdiction—that is to say, in requiring payment to be made by the Treasurer of San Joaquin County; upon which county the Court was not authorized to impose the charge

The District Court is directed to so modify the several orders that they shall be made payable by the Treasurer of the County of Mariposa.

Mr. Justice SPRAGUE expressed no opinion.