[Civ. No. 21025.   First Dist., Div. One.   Mar. 14, 1963.]

PASCHAL GRANT, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; ELLA LOUISE GRANT, Real Party in Interest.

Kamini K. Gupta and Gupta & Gupta for Petitioner.

No appearance for Respondent.

Noel D. Martin for Real Party in Interest.

SULLIVAN, J.—This is a proceeding to review an order of the trial court holding petitioner in contempt for disobedience of certain provisions of a final judgment of divorce. The principal question for our determination is whether the court below had jurisdiction in the first place to make the underlying divorce order now sought to be enforced by contempt. We have concluded that it did not. For convenience we refer to the parties herein as they appeared below, that is to say, to the real party in interest as the plaintiff and to the petitioner herein as the defendant.

On November 4, 1953, the plaintiff Ella Louise Grant commenced an action for divorce against the defendant Paschal Grant. The latter filed a cross-complaint for annulment and in the alternative for divorce. There were no children. After a trial, the court granted a divorce to the plaintiff on the ground of the defendant's extreme cruelty and denied defendant relief on his cross-complaint. In the

interlocutory judgment of divorce, filed September 30, 1954, the court made an order for the disposition of the community property but no orders for the payment to the plaintiff of alimony, support, attorneys' fees or costs. The community property was awarded as follows: To the plaintiff wife, all the real property with the furniture and furnishings therein, a beauty parlor with furnishings and appurtenances; to the defendant, a Pontiac automobile. In addition the defendant was ordered to pay a clothing bill and the indebtedness on the automobile and the plaintiff was ordered to pay, generally speaking, all remaining community bills. No appeal was taken from the interlocutory judgment.

On October 21, 1958, a final judgment of divorce was entered upon the submission by plaintiff of an affidavit therefor in substantially the form required by rule of court then in effect. (Rules for the Superior Courts, rule 20, now superseded by Cal. Rules of Court, rule 233.) Such judgment after providing for the dissolution of marriage "further Ordered, Adjudged and Decreed as follows: *that all previous orders herein be modified as follows*" (italics added); that the defendant pay plaintiff the sum of $900 at the rate of $75 per month; that all the community property of the parties except a television set "is hereby awarded" to the plaintiff; that all furniture removed from the residence of the parties, except the television set, be returned to the plaintiff by the defendant; that all real property "is hereby awarded" to the plaintiff; that all bills contracted by the parties before May 15, 1958, be paid by the defendant; and that plaintiff's attorneys are awarded the additional sum of $90 in full payment of counsel fees. At the end of the judgment appears an endorsement "Approved as to Form" signed by defendant's then attorney. No appeal was taken from such judgment.

Thus a comparison of the two judgments shows: (1) The interlocutory judgment ordered no payment to be made to plaintiff for alimony or any other purpose; the final judgment ordered payment of $900 but failed to specify the purpose or reason therefor. (2) The final judgment changed the disposition of community property. By its terms all community property except the television set was awarded to the plaintiff. Although no award of the television set was expressly made to the defendant, this can be reasonably inferred from the provisions of the order dealing with the return of the furniture. Under the interlocutory judgment,

the television set would fall within the award of household furniture to the plaintiff, providing of course it was located on the real property of the parties. In addition the interlocutory judgment awarded the Pontiac to the defendant, whereas under the final judgment it would fall within "all of the community property" awarded to the plaintiff. (3) The final judgment changed the payment of bills. Whereas, under the interlocutory judgment, the defendant was to pay the Pontiac and clothing bills and the plaintiff was to pay all remaining community bills, under the final judgment, all bills contracted before May 15, 1958, were to be paid by the defendant. (4) The final judgment awarded attorneys' fees whereas the interlocutory judgment made no award therefor. (5) The final judgment expressly provided that "all previous orders" were being modified.

It appears that the defendant made some payments to the plaintiff as ordered by the final judgment of divorce and that the plaintiff, apparently dissatisfied with the defendant's compliance with the court's order, initiated contempt proceedings prior to those now under review. Finally, on April 13, 1962, plaintiff obtained the issuance of an order to show cause re contempt upon her affidavit that the defendant had wilfully failed and refused to pay $675 of the $900 previously ordered, to transfer the Pontiac automobile to the plaintiff, and to return to her certain furniture and furnishings. The defendant filed a motion to quash the above order to show cause and to declare portions of the final judgment of divorce a nullity on the ground that the court had no jurisdiction to act in the matter. Defendant's position was that any provision of the judgment "purporting to award alimony, counsel fees, and the Pontiac automobile ... is a nullity."

The order to show cause and the above motion of the defendant were heard at the same time. In the course of such hearing, the plaintiff called as a witness her former attorney,[1] who, over the repeated objections of the defendant, testified substantially as follows: that after the aforementioned interlocutory judgment of divorce, the plaintiff commenced an action for separate maintenance against the defendant; that eventually after a discussion among the par-

---

[1] In response to the court's inquiry, plaintiff's counsel stated: "The purpose of this testimony, Your Honor, is to establish the facts and proceedings as they existed at that time, as they took place at that time, in view of the fact that the record is not illuminating on the facts surrounding the decree."

ties, their counsel and the trial judge in chambers, the parties "disposed of the matter" by having a final judgment of divorce granted in the earlier action now before us;[2] that the sum of $900 therein directed to be paid to plaintiff represented a compromise between the parties and "was intended to reimburse . . . [plaintiff] for certain property aspects"; and that such sum of $900 related to certain transactions occurring between the parties after the entry of the interlocutory decree. The court thereupon made its order denying the defendant's motion to quash the order to show cause and to declare portions of the final judgment of divorce a nullity and holding the defendant in contempt of the order contained in such final judgment under which he was required to pay plaintiff the sum of $900.[3]

There is and can be no dispute that the defendant, petitioner herein, has invoked the proper remedy. ▮ It is settled that as there is no appeal from an order made in a contempt proceeding, it may be reviewed upon certiorari if it is in excess of jurisdiction. (Code Civ. Proc., § 1222; *Tripp* v. *Tripp* (1922) 190 Cal. 201, 202 [211 P. 225]; *Phillips* v. *Superior Court* (1943) 22 Cal.2d 256, 257 [137 P.2d 838]; *Nutter* v. *Superior Court* (1960) 183 Cal.App.2d 72, 73 [6 Cal.Rptr. 404]; *Brady* v. *Superior Court* (1962) 200 Cal.App.2d 69, 72 [19 Cal.Rptr. 242].)

Nor can there be any question about the legal principles which guide and govern us in our examination of the final judgment of divorce underlying the contempt. ▮ In *Brady* v. *Superior Court, supra,* Mr. Justice Tobriner has written for this court: "A series of California cases hold that the violation of an order which exceeds the court's jurisdiction cannot produce a judgment of contempt. Mr. Justice Wood in *Oil Workers Intl. Union* v. *Superior Court* (1951) 103 Cal.App.2d 512 [230 P.2d 71] ruled: 'If it be

---

[2]The final judgment of divorce filed October 21, 1958, recites that plaintiff's motion therefor came on for hearing on July 24, 1958. According to the testimony of plaintiff's former counsel in the contempt proceedings, the latter date was the date the parties "disposed" of their divorce matters. However, the record before us shows that plaintiff's affidavit for final judgment was not signed until September 24, 1958, nor filed until the entry of the final judgment on October 21, 1958.

[3]Specifically the order adjudges defendant to be in contempt solely for his wilful failure to pay an arrearage of $675 and grants defendant the privilege of purging such contempt by complying with certain specified conditions. Failure to transfer or return property, although charged at the time of the issuance of the order to show cause, is clearly not involved as a basis for contempt.

determined that in the rendition of said judgment the trial court acted within its jurisdiction, then the inquiry ends, and the only order the reviewing court is authorized to make is one affirming the proceedings of the trial court. On the other hand, should it appear from the record as certified to us that the court either had no jurisdiction to pronounce said judgment, or exceeded its jurisdiction in doing so, then the proceedings should be annulled.' (P. 526) [Citations.]. As Witkin states: the 'view, long settled in California, is that a void order is never binding, and that its violation cannot constitute contempt. . . .' " (200 Cal.App.2d at p. 73.) We therefore proceed to determine whether, in rendering the final judgment of divorce, the trial court acted in excess of its jurisdiction.

It is well settled that where, as here, an interlocutory judgment of divorce has become final in the sense that it is no longer subject to appeal, motion for new trial or relief pursuant to section 473 of the Code of Civil Procedure, it is res judicata on all questions determined therein including the property rights of the parties. Absent any continuing authority of the court to modify its orders relating to alimony, the trial court is without jurisdiction to vacate or modify such judgment in any way. (*Dupont* v. *Dupont* (1935) 4 Cal.2d 227, 228 [48 P.2d 677]; *Bacigalupi* v. *Bacigalupi* (1925) 72 Cal.App. 654, 659 [238 P. 93]; *Borg* v. *Borg* (1938) 25 Cal.App.2d 25, 29-30 [76 P.2d 218]; *Overell* v. *Superior Court* (1938) 29 Cal.App.2d 418, 420 [84 P.2d 789]; *Harrold* v. *Harrold* (1954) 127 Cal.App.2d 582, 584 [274 P.2d 183]; *Brink* v. *Brink* (1956) 143 Cal. App.2d 527, 528-529 [299 P.2d 991].) Although an interlocutory judgment of divorce does not dissolve the marriage, where it neither awards alimony to the wife nor reserves the jurisdiction to make an allowance for her support, such judgment terminates the obligation of support and relieves the husband from all liability therefor. (*McClure* v. *McClure* (1935) 4 Cal.2d 356, 359 [49 P.2d 584, 100 A.L.R. 1257]; *Wilson* v. *Superior Court,* (1948) 31 Cal. 2d 458, 462-463 [189 P.2d 266]; *Peer* v. *Superior Court* (1958) 158 Cal.App.2d 477, 479 [322 P.2d 529].) In such event, the final dissolution of the marriage is the only question held in abeyance pending the entry of the final decree. (*Overell* v. *Superior Court, supra.*)

Where an interlocutory judgment of divorce has become final and the court has lost jurisdiction to change or modify it, such jurisdiction cannot be conferred on the

court even by the consent of the parties. (*Bacigalupi* v. *Bacigalupi, supra,* 72 Cal.App. 654, 659; *Baxter* v. *Baxter* (1935) 3 Cal.App.2d 676, 686 [40 P.2d 536]; *Gillespie* v. *Andrews* (1926) 78 Cal.App. 595, 598 [248 P. 715].)

In *Bacigalupi, supra,* prior to the entry of the final judgment of divorce, the court, acting pursuant to the written stipulation of the parties, entered an order purporting to modify the interlocutory judgment by awarding alimony to the wife, although such judgment contained no alimony provisions and had become final. On appeal it was held that the husband's motion to annul such order "was properly made as the want of jurisdiction of the trial court was apparent upon the face of the order. . . . That order having been made without jurisdiction, the appellant could treat it as a nullity; having moved to modify it, however, the motion should have been granted." (72 Cal.App. at p. 659.) In *Baxter, supra,* the trial court rendered an interlocutory judgment which, among other things, approved a property settlement agreement. Approximately one year later the parties entered into a second property setttlement agreement and the court, acting pursuant to their written consent, made an ex parte order approving the second agreement and making it a part of the interlocutory judgment as a substitute for the first agreement. A final judgment of divorce signed on the same day thereupon confirmed the binding effect of the provisions of the interlocutory decree. Four years after the final judgment, the court made another ex parte order, further amending the interlocutory judgment *nunc pro tunc* as of the first ex parte amendatory order, requiring the defendant husband to make certain payments pursuant to the second agreement. The appellate court held that the defendant's motion to expunge from the record the amendment to the interlocutory judgment and to quash certain proceedings taken to enforce it should have been granted since among other reasons "at the time when the second agreement was filed the court had lost jurisdiction to change its original order in relation to property, and such jurisdiction could not be conferred upon it even by the consent of the parties. [Citations.]" (3 Cal.App.2d at p. 686.) In *Gillespie, supra,* 78 Cal.App. 595, after both the interlocutory and final judgments of divorce had become final, the parties filed a written stipulation to the effect that they could be modified with reference to the custody and support of a minor child. Both parties thereafter appeared in court, and, after evidence was introduced, the court made an order en-

titled "Modification of Final Decree of Divorce" which provided that the parties desired the decree to be modified so as to settle and dispose of their property rights and that, although they had entered into a property settlement agreement before the interlocutory judgment, neither the interlocutory nor the final judgment contained any provision concerning property rights. The order then awarded custody of the minor child to the defendant husband instead of to the wife as both judgments had theretofore provided and further directed that "[i]n lieu of said property settlement" the defendant should pay certain sums to the plaintiff for her care, support and maintenance. Neither the interlocutory nor final judgment of divorce contained provisions for the payment of alimony. The husband thereafter failing to make such payments, contempt proceedings were initiated by the wife. The appellate court issued a peremptory writ of prohibition to restrain the trial court from enforcing its modified decree adding that it had no jurisdiction to modify either the interlocutory or final judgment of divorce and its so-called order of modification was void.

Applying the above principles to the case before us, it is clear that the court below had no jurisdiction to modify the interlocutory judgment by changing the disposition of the community property or by adding a provision for the payment of alimony or support. Indeed, on oral argument the plaintiff conceded this. Plaintiff contends that $900 was ordered paid to her not as alimony and support but in settlement of property rights. She argues: That the interlocutory judgment did not purport to adjudicate *all* community property but only such as then existed; that, as her former attorney testified, the $900 was for a settlement of property rights; and that "it is clear that this was an adjudication of property rights accruing during the four-year period between the interlocutory and final decrees."

However we are required to take the record as we find it and to rest upon the final judgment of divorce as signed and filed by the trial court. (See *Bacigalupi* v. *Bacigalupi, supra,* 72 Cal.App. 654, 658.) Whether the court acted beyond its jurisdiction in making certain orders contained in such judgment which are void on their face must be determined from a consideration of the judgment roll alone, extrinsic evidence being inadmissible. (*Hahn* v. *Kelly* (1868) 34 Cal. 391, 402 [94 Am.Dec. 742]; *Kaufmann* v. *California Mining etc. Syndicate* (1940) 16 Cal.2d 90, 91

[104 P.2d 1038]; *Marlenee* v. *Brown* (1943) 21 Cal.2d 668, 677 [134 P.2d 770]; *Stevens* v. *Kelley* (1943) 57 Cal.App.2d 318, 324 [134 P.2d 56] and cases collected therein; see generally 29 Cal.Jur.2d, Judgments, § 189, pp. 144-146.)

The particular order of the final judgment which the defendant is claimed to have disobeyed does not state that the $900 is alimony or a disposition of community property. In fact, the provision is silent as to what the purpose of the payment is. While it is true, as plaintiff argues, that any community property acquired after the interlocutory judgment can be disposed of by the court at the time of the final judgment (Civ. Code, § 132[4]; see *Franklin* v. *Franklin* (1945) 67 Cal.App.2d 717, 720-721 [155 P.2d 637][5]) there is nothing in the final judgment that indicates this was done. As we pointed out earlier (see footnote 2 *ante*) the final judgment recites that plaintiff's motion therefore came on for hearing on July 24, 1958, "upon all the files, papers, proceedings and records" in said action. This is the only motion stated on the record. Nowhere is there any indication of a motion or application of plaintiff seeking the award to her of community property acquired by the parties subsequent to the entry of the interlocutory judgment (cf. *Franklin* v. *Franklin, supra*). Indeed the record is in flat contradiction to what plaintiff urges.

We have already compared the provisions of the interlocutory and final judgments. To summarize them in another way: the interlocutory judgment contained no money payment for the plaintiff, no attorneys' fees or costs, no award of the Pontiac automobile, no order for the defendant to pay bills except the Pontiac and a specified clothing bill. The final judgment ordered payment of money to the plaintiff, awarded her attorneys' fees, awarded her all community property including the Pontiac, except a television set, and ordered the defendant to pay all bills incurred after a specified date.[6]

From all of the foregoing we reach these final conclusions: The final judgment ordered defendant to pay plaintiff $900

[4]Section 132 provides for the entry of a final judgment granting, *inter alia*, "such other and further relief as may be necessary to complete disposition of the action, . . ."

[5]Disapproved on another point in *Zaragosa* v. *Craven* (1949) 33 Cal.2d 315, 320-321 [202 P.2d 73, 6 A.L.R.2d 461].

[6]In addition the interlocutory judgment ordered both parties to execute and deliver all necessary documents, but the final judgment omitted this order.

(an order admittedly not complied with) for an unspecified purpose. If such order is for the support of the plaintiff, it is clearly beyond the court's jurisdiction since the interlocutory decree, by failing to so provide, terminated all liability for support (*McClure* v. *McClure, supra,* 4 Cal.2d 356; *Wilson* v. *Superior Court, supra,* 31 Cal.2d 458; *Peer* v. *Superior Court, supra,* 158 Cal.App.2d 477). If such order represented a disposition of community property, it was still beyond the court's jurisdiction, since the court had no jurisdiction to modify the disposition of community property contained in the interlocutory judgment. The final decree does not show that such order was part of an award of community property acquired after the interlocutory judgment but on the contrary shows that it was, if not an award of support, part of an over-all alteration of a previous judgment dealing with an award of money, the payment of bills, and an order for attorney fees. In either event, the order for the payment of $900 and all other orders contained in the final judgment inconsistent with corresponding orders in the interlocutory judgment, except of course the order granting the divorce and dissolving the marriage, were beyond the jurisdiction of the court and void. Although the approval of the form of the proposed final judgment of divorce by defendant's attorney would not alone engraft on the document a contractual agreement or constitute an assent by the defendant to be bound by the terms of the judgment (*Leupe* v. *Leupe* (1942) 21 Cal.2d 145, 150-151 [130 P.2d 697]) nevertheless, assuming *arguendo,* that it was tantamount to a written consent of both parties to the terms of the judgment, the parties were powerless to confer on the court jurisdiction to change or modify the interlocutory judgment. (*Bacigalupi* v. *Bacigalupi, supra,* 72 Cal. App. 654; *Baxter* v. *Baxter, supra,* 3 Cal.App.2d 676; *Gillespie* v. *Andrews, supra,* 78 Cal.App. 595.)

The trial court upon rendering the final judgment of divorce acted in excess of its jurisdiction by including therein the various orders discussed above, thereby purporting to add to or change the interlocutory judgment which had become final and was res judicata between the parties. The order granting the final divorce and dissolving the marriage was of course valid and within the power of the court. However, the remaining orders, insofar as they represented a modification of the interlocutory judgment and were inconsistent with it, including the specific order for the payment of $900 by defendant to plaintiff, were void. Since

such orders have no binding effect, the defendant cannot be held in contempt for violating them and the order of the respondent court so adjudging him is also beyond the jurisdiction of the court.

We wish to make clear that our views herein do not in any way extend to or affect the order, contained in the final judgment of divorce, granting the divorce and dissolving the marriage between the parties. Nor should they be deemed to preclude the parties from seeking in an appropriate independent action a determination of any community property rights arising after, and not adjudicated in, the interlocutory judgment of divorce. (See *Estate of Williams* (1950) 36 Cal.2d 289, 292-293 [223 P.2d 248, 22 A.L.R.2d 716].)

The order denying the motion of defendant Paschal Grant, petitioner herein, to quash the order to show cause *re* contempt and to declare portions of the final judgment of divorce to be a nullity and the order adjudging said petitioner in contempt of court are, and each of them is, annulled.

Bray, P. J., and Molinari, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied. May 8, 1963.