[L.A. Nos. 31723, 31724. July 5, 1984.]

ROBERT CORENEVSKY, Petitioner, v.
THE SUPERIOR COURT OF IMPERIAL COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

[L.A. No. 31722. July 5, 1984.]

In re DAVID A. TITSWORTH, as Auditor-Controller, etc.,
on Habeas Corpus.

COUNSEL

Ephraim Margolin, under appointment by the Supreme Court, Nicholas C. Arguimbau, Sandra Coliver, Steven E. Feldman, Edward Zinter, Public Defender, George Siddell and Walter Lundstein, Deputy Public Defenders, Thomas M. Fries and James H. Harmon, County Counsel, Steven D. Zimmer, Chief Assistant County Counsel, Efren N. Iglesia, Assistant County Counsel, and Steven M. Basha, Deputy County Counsel, for Petitioners.

No appearance for Respondent Court.

John K. Van de Kamp, Attorney General, Harley D. Mayfield, Sanford H. Feldman, Jay M. Bloom, Keith I. Motley and Steven V. Adler, Deputy Attorneys General, for Real Party in Interest and Respondent.

OPINION

MOSK, J.—In these three consolidated cases we address claims regarding the necessity, funding and enforcement of court-ordered ancillary defense services for indigent defendants. The issues have been briefed by all three parties with fervor: not one supplemental brief, petition, or letter to the court has escaped speedy and spirited response by opposing counsel.

Petitioner Corenevsky, an indigent criminal defendant, requests a writ of mandate to review superior court orders denying him *state*-funded ancillary defense services and the assistance of a second appointed counsel. He also requests a writ of mandate to compel the dismissal of all charges against him because the county has refused to comply with superior court orders granting and denying him *county*-funded ancillary defense services. Petitioner Titsworth, the Auditor-Controller of Imperial County, seeks a writ of habeas corpus to review a superior court order holding him in contempt for his failure to disburse sufficient county funds to cover court-ordered defense services.

We conclude that Corenevsky was properly denied the assistance of a second state-funded appointed counsel; that he was both properly granted and improperly denied county-funded ancillary defense services; and that his request for dismissal is premature. We further conclude that the auditor was properly found in contempt of court for failing to disburse funds sufficient to comply with the court's order.

In the course of these determinations we emphasize that an indigent defendant has specific statutory rights to certain court-ordered defense services at county expense; that an indigent defendant has a constitutional right to other defense services, at county expense, as a necessary corollary of the right to effective assistance of counsel; that such rights must be enforced, and a court's order directing payment for such services must be obeyed, even if a county has no specifically appropriated funds for those purposes.

We are aware of the burden these determinations may impose on some financially strapped counties. Nevertheless, relief, should counties deem it necessary, must come through statewide legislation designed to ease such burdens on local government; relief cannot be attained through retreat from established rules designed to implement indigent defendants' constitutional right to effective assistance of counsel, nor through methods that intrude on the exclusive power of the judiciary to determine the due process rights of indigent defendants. We therefore conclude that when, as in the present case, insufficient funds are budgeted by the county to cover court-ordered defense services, the superior court may order the county auditor to adopt other means of compliance without prior approval from the county board of supervisors. The board does not have the power to veto a court order.

In this situation, the auditor's duty—like that of any other person—is clear: the order of a court is to be obeyed, not ignored. Of course, the auditor may challenge the propriety of that order, but only in the courts. In those cases in which the county auditor willfully refuses to comply with the court's order, the auditor may be held in contempt until compliance is achieved.

## I. *Factual and Procedural Background*[1]

Since July 14, 1981, Corenevsky has been in custody in Imperial County on a pending charge of murder with special circumstances and robbery.

---

[1] We observe initially that the record properly before us is limited to documents existing at the time of the superior court orders that are the subject of these three proceedings. Other documents subsequently offered to this court by Corenevsky, and lodged here, in an attempt to augment the record, have been disregarded. References to those documents in Corenevsky's brief have similarly been disregarded.

A. *L.A. 31724: Rulings and Actions Taken Pursuant to Penal Code Section 987.9*[2]

Because the district attorney originally sought the death penalty, and although Corenevsky was already represented by the public defender, Corenevsky filed a motion under Penal Code section 987.9 for state funds with which to obtain the assistance of an additional, more experienced trial counsel.[3] Respondent superior court denied the motion on the ground that section 987.9 is inapplicable to matters of second counsel. In December 1981, the proceeding having come before this court during the pendency of *Keenan v. Superior Court* (1982) 31 Cal.3d 424 [180 Cal.Rptr. 489, 640 P.2d 108], we issued an order granting Corenevsky's petition for hearing and retransferring the matter to the Court of Appeal with directions to issue an alternative writ of mandate. After argument, that court granted a peremptory writ and ordered the superior court to hear the matter under section 987.9 and make appropriate orders regarding the appointment of a second attorney. The court proceeded to do so, and appointed Attorney Barton C. Sheela, Jr., to assist the defense, his fees to be paid pursuant to section 987.9.

In May 1982 we filed our modified decision in *Keenan*. In that opinion we declared that the appointment of second counsel was not among those matters within the compass of section 987.9, which are *state* funded, but was covered in capital cases by section 987, subdivision (b), and in noncapital cases by section 987.2, which contemplate largely *county* funding. (*Keenan, supra,* 31 Cal.3d at p. 430.)

It appears that the Imperial County Board of Supervisors, advised of the above aspect of *Keenan,* refused payment of the attorney fees requested by Sheela on the ground that such payment would allegedly "bankrupt" the county. The superior court made no attempt to enforce payment. In early December 1982 the court granted Sheela's motion to be relieved, denied Corenevsky's motion for dismissal and, apparently in the interest of expediting trial of the case, ordered that the prosecutor not be permitted to seek the death penalty; the possibility of a life sentence without possibility of parole, however, remained. Neither Corenevsky nor the People sought extraordinary relief at this point.

---

[2]For the limited purpose of allowing this court to hear public oral argument and to publish an opinion in this case, Corenevsky has waived, by letter to this court, his right to maintain as confidential the fact that an application under section 987.9 has been made.

[3]Section 987.9 provides in relevant part: "In the trial of a capital case the indigent defendant, through his counsel, may request the court for funds for the specific payment of investigators, experts, and others for the preparation or presentation of the defense." The section also mandates: "the fact that an application has been made shall be confidential and the contents of the application shall be confidential." (See fn. 2, *ante.*)

Remaining counsel for defendant (the public defender) then filed a section 987.9 motion for funds to continue employment of defense investigators and to hire certain experts. The court concluded that need had been shown but that relief under section 987.9 was inappropriate because the matter was no longer a "capital" case. Corenevsky thereupon sought writ review in the Court of Appeal, urging that the case should be considered "capital" within the meaning of section 987.9. To do otherwise under the circumstances, he argued, would not only deprive him of that section's umbrella of confidentiality but would also offend constitutional guarantees of effective assistance of counsel, due process, and equal protection of the laws. An award for defense services under other statutory provisions, he suggested, would also raise the real possibility of continued nonpayment by the board of supervisors—because such statutes, unlike section 987.9, contemplate county rather than state funding.

## B. *L.A. 31723: Rulings and Actions Taken Pursuant to Other Statutes*

While simultaneously pursuing the foregoing proceeding in the Court of Appeal, on December 22 and 23, 1982, Corenevsky moved for additional funds in the superior court: he sought and was granted county funds for four expert witnesses, including a jury selection expert; he requested, but was denied, funds for investigators and law clerks.[4] These motions and orders were made pursuant to Evidence Code sections 730 (appointment of experts) and 731 (payment of court-appointed experts), and Penal Code sections 987.6 (partial reimbursement by state for cost of court-appointed counsel) and 987.8 (reimbursement by defendant for legal assistance). In total, the court ordered $13,314 for defense services.

In early January 1983 Corenevsky filed a second petition for writ review in the Court of Appeal. He urged that he was constitutionally entitled to investigators and other ancillary services at public expense, and that to deny him funds for such purposes was to deny him equal protection, due process, and the effective assistance of counsel. The Court of Appeal denied both this petition and the preceding petition urging that section 987.9 applied. On the same day the board of supervisors refused to authorize payment of the court-ordered $13,314 for experts—again on the ground that such payment would allegedly "bankrupt" the county. Corenevsky filed petitions for hearing in this court in these two proceedings.

---

[4]Corenevsky was subsequently granted court-ordered funds for the continued employment of investigators. The record does not disclose whether such funds have been made available, and the parties do not address the issue now.

C. *L.A. 31722: Enforcement of the Trial Court's December 23 Order by Contempt*

In mid-January 1983, Corenevsky filed a third petition—for a writ of mandate—in the Court of Appeal. Respondents named were the Imperial Superior Court and the People. He urged in that petition that a fair trial had become impossible, and that the only appropriate remedy was dismissal of the charges against him, because the county refused to pay even the $13,314 ordered for appointed experts. The petition apparently sought no order directing the disbursal of the previously ordered funds; the county auditor was not named as a party. The People, however, filed briefs arguing that dismissal was inappropriate, and that, instead, the order of payment should be enforced.

Accordingly, the Court of Appeal issued an order directing petitioner Titsworth to disburse $13,314 to Corenevsky before January 31 or show cause before the superior court why he should not be held in contempt for failing to do so. Titsworth sought rehearing on the ground that the appellate court lacked jurisdiction over him, a nonparty. On the same day the Court of Appeal issued the following order: "The petition for rehearing has been read and considered and is denied. 'The board shall approve [a] claim and the auditor shall issue [a] warrant for [an] expenditure . . . upon an order of a court of competent jurisdiction . . . as . . . provided by law.' (Gov. Code, § 29122.)"

Titsworth did not seek a hearing in this court. But neither did he make payment of the $13,314. On January 31, the deadline for disbursal set in the Court of Appeal's show-cause order, the superior court ordered defense counsel to prepare contempt papers against Titsworth. On the following day, defense counsel filed a request in the Court of Appeal asking that the superior court be ordered to initiate contempt proceedings because defendant was not a party to that proceeding. The Court of Appeal responded by directing the superior court to order the matter on calendar February 4, and to itself "prepare the papers and have them served on the Auditor."

The superior court judge then appointed counsel to represent the court, and following the February 4 hearing Titsworth was found in contempt. He was ordered to pay a fine of $500 and go to jail until he complied with the December 23 order to disburse. Execution was stayed until February 9. Titsworth thereupon filed a petition for habeas corpus and application for stay in the Court of Appeal. That court took no action before expiration of the trial court's stay, and on the evening of February 9, Titsworth took up residence at the Imperial County jail.

The next day Titsworth filed his petition for writ of habeas corpus and request for stay in this court. In the meantime, however, the Court of Appeal denied his petition and request; we therefore filed his petition and request as a petition for hearing.

On February 11, we stayed both (1) enforcement of the order holding Titsworth in contempt, and (2) the imminent trial of Corenevsky, pending determination of all three petitions for hearing. We thereafter granted hearings in all three matters, and subsequently issued alternative writs of mandate in L.A. 31724 and L.A. 31723; we also issued an order to show cause directed to the Imperial Superior Court in L.A. 31722.

We note parenthetically that in the course of these procedural maneuvers Corenevsky has been represented by no less than eight different attorneys, including three public defenders who later were hired by the district attorney's office. The district attorney subsequently recused himself because of the conflict; and the new county public defender, conceding inter alia that he had abandoned Corenevsky's defense, joined Corenevsky's motion in propria persona for appointment of new trial counsel and recusal of the public defender. New counsel was appointed to represent Corenevsky at trial, and we appointed appellate counsel to represent him in this court. The Attorney General has replaced the district attorney in the trial court, and also represents the People in these proceedings. Titsworth has at all times been represented by county counsel.

## II. *Contentions*

### A. *Section 987.9 Funds*

#### 1. *Appointment of Second Counsel*

Our decision in *Keenan, supra,* 31 Cal.3d 424, 430, clearly forecloses Corenevsky's claim that Penal Code section 987.9 contemplates appointment of second counsel. Moreover, our recent decision in *Sand* v. *Superior Court* (1983) 34 Cal.3d 567 [194 Cal.Rptr. 480, 668 P.2d 787], explicitly holds that "[i]n those murder cases . . . in which the death penalty will not be sought, even though the offense charged is statutorily punishable by death, section 987.9 is inapplicable." (*Id.,* at p. 572.) Any further issues arising from the granting of Attorney Sheela's motion to be relieved are foreclosed by waiver: as the People observe, one of Corenevsky's former public defender counsel, by letter to opposing counsel and the trial court on December 8, 1982, made an apparently deliberate tactical decision not to challenge the trial court's early December rulings (1) relieving second counsel, (2) removing the possibility of the death penalty, and (3) denying Cor-

enevsky's motion to dismiss. Contrary to vehement protestations by Corenevsky's new counsel, we cannot construe former counsel's statements as anything but a plain and intentional waiver of those issues.

### 2. *Court-ordered Experts*

Similarly, our decision in *Sand* forecloses Corenevsky's argument that the trial court erred in failing to order state funds for experts or other defense services pursuant to section 987.9. We therefore deny Corenevsky's petition for a writ of mandate in L.A. 31724. As we observed in *Sand,* however, both statutory and constitutional law may afford indigent defendants access to county funds for "equivalent relief." (34 Cal.3d at p. 575 & fns. 3, 4.)

### B. *Funds for Ancillary Defense Services Ordered Pursuant to Other Statutes and Authority*

The thrust of Corenevsky's petition in L.A. 31723 may be simply summarized: assuming that state funding under Penal Code section 987.9 is no longer available, and in light of the board of supervisors' demonstrated and avowed intention to refuse to authorize any ancillary funding at county expense, a fair trial has been rendered impossible and mandate must issue directing the trial court to dismiss all charges.[5] We find it unnecessary to reach this issue, however, because as the People suggest, the question of dismissal is premature: the appropriate inquiry is whether the trial court's orders regarding ancillary defense services were proper, and further, whether they are enforceable.

### 1. *Propriety of the Orders Regarding Defense Services*

Both Corenevsky and the People observe that Evidence Code section 730 explicitly provides for court-appointed expert witnesses,[6] and that Evidence

---

[5]We reject suggestions by the People that Corenevsky expressly waived this argument by his former counsel's letter of December 8. That letter clearly pertains only to a theory of dismissal based on the removal of second counsel; it does not refer to a theory of dismissal based on the county's failure to disburse court-ordered county funds for defense experts.

[6]That section provides in full: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which such expert evidence is or may be required. The court may fix the compensation for such services, if any, rendered by any person appointed under this section, in addition to any service as a witness, at such amount as seems reasonable to the court."

Code section 731, subdivision (a),[7] and Government Code section 29603[8] clearly state that the county must pay those court-ordered expenses. Of course, these statutes do not directly provide for court-ordered investigators, law clerks, or enumerated experts other than expert witnesses generally. ■ However, as we observed in *Sand,* the right to such services is to be inferred from at least two statutes respecting an indigent defendant's statutory right to legal assistance;[9] and more fundamentally, such court-ordered defense services may be required in order to assure a defendant his constitutional right not only to counsel, but to the effective assistance of counsel.

■ It cannot be doubted that the right to counsel guaranteed by both the federal and state Constitutions[10] includes, and indeed presumes, the right to effective counsel (*United States* v. *Cronic* (1984) — U.S. —, — [80 L.Ed.2d 657, 669, 104 S.Ct. 2039, 2044]; *Strickland* v. *Washington* (1984) — U.S. —, — [80 L.Ed.2d 674, 693 104 S.Ct. 2052, 2064]; *McMann* v. *Richardson* (1970) 397 U.S. 759, 771, fn. 14 [25 L.Ed.2d 763, 773, 90 S.Ct. 1441]; *People* v. *Fosselman* (1983) 33 Cal.3d 572, 581-583 [189 Cal.Rptr. 855, 659 P.2d 1144]; *Keenan* v. *Superior Court* (1982) *supra,* 31 Cal.3d 424, 428; *People* v. *Pope* (1979) 23 Cal.3d 412, 423-425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]),[11] and thus also includes the right to reasonably necessary ancillary defense services. (*Keenan, supra,* 31 Cal.3d at p. 428 ["The right to effective counsel also includes the right to ancillary services necessary in the preparation of a defense"]; *In re Ketchel* (1968) 68 Cal.2d 397, 399-400 [438 P.2d 625] ["'A fundamental part of the constitutional right of an accused to be represented by counsel is that his attor-

---

[7]That subdivision provides: "In all criminal actions and juvenile court proceedings, the compensation fixed under Section 730 shall be a charge against the county in which such action or proceeding is pending and shall be paid out of the treasury of such county on order of the court."

[8]That section provides in relevant part: "The sums required by law to be paid to . . . witnesses in criminal cases tried in a superior court . . . are county charges."

[9]We noted in *Sand* that Penal Code "'[s]ection 987, subdivision (a), provides for court appointment of counsel in noncapital cases; section 987.8, subdivision (f)(1), provides that, based on a defendant's present ability to pay, he may be required to reimburse the court for 'legal assistance' provided, and further defines 'legal assistance provided' to include: 'legal counsel and supportive services including, but not limited to, medical and psychiatric examinations, *investigative services, expert testimony,* and *any other form of services provided to assist the defendant in the preparation and presentation of defendant's case.'"* (34 Cal.3d at p. 575, fn. 3, italics in original.)

[10]United States Constitution, 6th Amendment; California Constitution, article I, section 15.

[11]See also *Cooper* v. *Fitzharris* (9th Cir. 1978) 586 F.2d 1325, 1329; *Marzullo* v. *State of Maryland.* (4th Cir. 1977) 561 F.2d 540, 542; *Beasley* v. *United States* (6th Cir. 1974) 491 F.2d 687, 696 [26 A.L.R.Fed. 204]; *McQueen* v. *Swenson* (8th Cir. 1974) 498 F.2d 207, 213; *United States* v. *DeCoster* (D.C.Cir. 1973) 487 F.2d 1197, 1202; *MacKenna* v. *Ellis* (5th Cir. 1960) 280 F.2d 592, 599, modified on another ground, 289 F.2d 928 (in bank).

ney . . . is obviously entitled to the aid of such expert assistance as he may need . . . in preparing the defense' "]; *Puett* v. *Superior Court* (1979) 96 Cal.App.3d 936, 938-939 [158 Cal.Rptr. 266] ["the right to counsel encompasses the right to effective counsel which in turn encompasses the right of an indigent and his appointed counsel to have the services of an investigator"]; *People* v. *Faxel* (1979) 91 Cal.App.3d 327, 330 [154 Cal.Rptr. 132] ["The due process right of effective counsel includes the right to ancillary services necessary in the preparation of a defense"]; cf. *Mason* v. *State of Arizona* (9th Cir. 1974) 504 F.2d 1345, 1351 ["the effective assistance of counsel guarantee of the Due Process Clause requires, when necessary, the allowance of investigative expenses or appointment of investigative assistance for indigent defendants"].)

A right to ancillary defense services will thus arise if Corenevsky has demonstrated the need for such services by reference to " 'the general lines of inquiry he wishes to pursue, being as specific as possible.' " (*Faxel, supra,* 91 Cal.App.3d at p. 330; *People* v. *Worthy* (1980) 109 Cal.App.3d 514, 520-521 [167 Cal.Rptr. 402].)[12] Although such motions can be granted only if supported by a showing that the investigative services are reasonably necessary (*Puett, supra,* 96 Cal.App.3d at p. 939), it has been recognized that because of the early stage at which the request typically arises, it will often be difficult for counsel to demonstrate a clear need for such funds. (*Mason* v. *State of Arizona, supra,* 504 F.2d at p. 1352.) Therefore the trial court should, in appropriate circumstances, "view with considerable liberality a motion for such pre-trial assistance." (*Ibid.*)[13]

 In the present case the trial court granted Corenevsky's requests for expert witnesses and a jury selection expert, and denied his request for law clerks. Although the record is ambiguous, it reveals that the court also initially denied, but subsequently granted, some funds for investigative services. Neither party has directly questioned the propriety, amount, or enforcement of the latter order; moreover, the current state of the record would not permit us to resolve any issues arising from that order. We there-

---

[12]We reject the People's suggestion that county counsel may be present at a hearing on such requests. As both Corenevsky and county counsel point out, such a procedure would create unnecessary conflicts of interest; in any event, county counsel's presence cannot be permitted because such petitions are entitled to be confidential. (*Keenan, supra,* 31 Cal.3d 424, 430; *Faxel, supra,* 91 Cal.App.3d 327, 330, fn. 1.)

[13]We also reject the People's suggestion that we add a second "prong" to this test by requiring defendants to convince the trial court that the "amount requested is reasonable in light of budgeted monies available, balancing the likely benefit to the defense against the total amount requested." However well the People's suggestion is intended, as Corenevsky observes, such a rule would pose serious problems of equal protection: it would directly condition a defendant's right to ancillary services, and hence effectiveness of counsel, on the fisc of the county in which he is being prosecuted. (Cf. *Serrano* v. *Priest* (1971) 5 Cal.3d 584 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].)

fore do not address any issues relating to Corenevsky's requests for investigator services.

The People claim that the trial court erred in granting Corenevsky's request for a jury selection expert. Corenevsky, cn the other hand, claims the court erred in denying his request for law clerks.[14]

■ Of course, a trial court's order may be set aside only if it constitutes an abuse of discretion. An order is presumed correct; all intendments are indulged in to support it on matters as to which the record is silent, and error must be affirmatively shown. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].)

■ Although Corenevsky's motion was entitled to have been heard *in camera,* and would therefore not normally be subject to disclosure, we note that former defense counsel consented to a hearing in open court. Moreover, the record indicates that former counsel also supplied the People with copies of the written motion for defense services, apparently as an appendix to one of the myriad other motions filed in this case. We therefore refer to and quote from those transcripts and written motions in determining whether the trial court erred in granting and denying the requested defense services.

Corenevsky's request for $8,740 for a jury selection expert was based on his former counsel's belief "that the difficulty of selecting a jury in a murder case with special circumstances alleged demands the assistance of an expert." The record also contains other confidential information, not disclosed to the People, but which was known to the trial court, and which indicates the necessity for special attention to jury selection in this case. Although we should not be interpreted as generally approving of public funds being paid for a so-called jury selection expert, in this instance the trial court had ample basis on which to grant Corenevsky's request; we conclude that it was well within its discretion in doing so.

■ Defendant also set out in great detail the basis for his request for continuing funding of two law clerks. His written motion for funds declared:

"The need for two law clerks: Ms. Judith A. Descalso has clerked for the Public Defender on this matter for several months and is very familiar with the legal aspects of the pretrial matters and has assisted in preparing several of the trial motions. She has also been researching and preparing

---

[14]The record reveals that at the time of the above requests Corenevsky simultaneously made additional requests for funds for other ancillary services. Because he has not focused on these additional requests, or the court's orders thereon, we decline to address them at this time.

voir dire and jury instructions. Her assignment will be to assist in court during the trial of the matter and this assistance has two aspects.

"First, she will ready and make available to counsel pleadings and transcripts tabbed to specific pages from the voluminous materials required at trial. This includes five trial index binders, an index to those binders, the trial motions and notes for factual argument, and the case boxes of discovered reports and memoranda.

"Second, she will conduct legal research as needed during the trial and prepare copies of cases and memoranda as needed. As this is a very complex case in re the expected testimony, the lack of this performance would [impair counsel's adequacy].

"Mr. Steven Joffe has clerked on this matter for about four months. He has continually worked on the research and preparation of memoranda and written objections to the multitude of tangible and intangible evidence that is expected to be offered by both the People and the defendant. His detailed knowledge of this is an invaluable asset at trial.

"His primary assignment will be to provide further memoranda as needed regarding specific research needing elaboration for argument on which he completed work.

"The remainder of his primary assignment will be to study the daily transcripts with counsel during evening sessions so that needed research may be completed.

"It is expected that various motions will be made during trial that will arise only as trial is ongoing. These matters will need research and preparation and this will be Mr. Joffe's secondary assignment to be worked with Ms. Descalso. It is expected these motions will include motions to strike the testimony of witnesses, dismissal and mistrial. The motions may also be as to exclusion or suppression of tangible or intangible evidence as facts unfurl.

"Both law clerks will be expected to apportion the task of arranging the travel and accommodations of witnesses and expert witnesses. The clerks will be expected to brief the witnesses on the proceedings and conduct an initial interview with the witnesses. A report will then be made to counsel who will cover the important aspects with each witness and individually prepare the experts as well."

Counsel also argued that the volume of documents generated by both parties required the assistance of the law clerks in order to sort and organize

the materials. He concluded that without their assistance "this defendant could not receive adequate or effective assistance of counsel."

This showing would be sufficient to support a trial court's conclusion that the requested services would be not merely convenient but reasonably necessary. (*Puett, supra,* 96 Cal.App.3d 936, 939; *Mason* v. *State of Arizona, supra,* 504 F.2d 1345, 1352.) The question posed by Corenevsky, however, is whether the trial court erred in denying such funds. If the court had explicitly found the requested services were not reasonably necessary, we would not now second-guess that determination; as the People observe, an appellate court will reverse such an order only when "the circumstances shown compelled the [trial] court to exercise its discretion only in one way, namely, to grant the motion." (*Puett, supra,* 96 Cal.App.3d at p. 941.) The record, however, demonstrates on its face that the trial court denied Corenevsky's motion, not on the basis of lack of need, but because the court felt the request related to "staffing problems[,] and that is something that you should be taking up with your public defender and his budget instead of the court simply saying that in addition to whatever budget you already have the court is going to expand that budget. Whether you like it or not . . . there are budgetary constraints."

The record clearly demonstrates that such an attempt through the public defender's office would have been futile. Moreover, the court's order is suspect because it fails to address the key issue posed by defendant: whether such ancillary services are reasonably necessary. Furthermore, the record reveals that the court made its order under the assumption—perhaps reasonable at the time, but as we shall explain, mistaken—that the court could order funds for expert witnesses under Evidence Code section 731,[15] but had no authority to order other needed ancillary services. Because the trial court erroneously failed to base its order on a finding of the reasonableness of Corenevsky's request for law clerks,[16] and because it apparently held a mistakenly limited view of its authority to authorize services, its order in this respect was error.

2. *The Auditor's Power to Comply With the Trial Court's Orders*

■ Titsworth was apparently advised by county counsel that he could not disburse funds to cover court-ordered services unless there existed suf-

---

[15]See Government Code sections 29741, subdivision (d), and 29603.

[16]We decline the People's invitation to view the trial court's order of December 23, 1982, in light of subsequent statements made by the court in early January 1983. The order is to be reviewed in light of the facts and statements before the court on December 23.

For the same reason, we reject Corenevsky's suggestion that we review the propriety of requests and orders regarding other defense services, all made subsequent to the requests and orders at issue in L.A. 31723.

ficient allocated monies in an appropriate account in the county budget. Reasoning that disbursement in excess of appropriated funds is prohibited and would subject him to personal liability (Gov. Code, §§ 29120, 29121),[17] and reasoning that only the county board of supervisors has the authority to appropriate funds or order a sufficient transfer from contingency funds (*id.*, § 29130)[18]—but had expressly refused to do so in this case—Titsworth apparently believed the court's order could not legally be paid (*id.*, § 29125).[19]

As we shall explain, Titsworth's position ignores provisions of the Government Code that allow the auditor, on his own, to issue a warrant to cover the services ordered in this case. Furthermore, his argument is premised on an erroneous view of both the auditor's and the board of supervisors' role with respect to court-ordered defense services.

As previously observed, both the statutes and the constitutional right to effective counsel authorize the court to appoint experts and order other defense services. In all such cases the court-ordered services are "expenses necessarily incurred in the support of persons charged with or convicted of crime and committed to the county jail . . . *and for other services in relation to criminal proceedings for which no specific compensation is prescribed by law* . . . ." (Gov. Code, § 29602, italics added.) Expenses under Government Code section 29602 are "county charges" that shall be paid by the county auditor without regard to the existence of a specific appropriation to

---

[17]Section 29120 states: "Except as otherwise provided by law, the board and every other county or special district official and person shall be limited in the making of expenditures or the incurring of liabilities to the amount of the appropriations allowed by the budget or as thereafter revised by addition, cancellation or transfer."

Section 29121 states: "Except as otherwise provided by law, warrants issued, expenditures made, or liabilities incurred in excess of any of the budget appropriations are not a liability of the county or special district, but the official making or incurring the expenditure in an amount known by him to be in excess of the unencumbered balance of the appropriation against which it is drawn is liable therefor personally and upon his official bond."

[18]Section 29130 provides: "Balances in appropriations for contingencies, including accretions from cancellation of specific appropriations, and revenues from any source, including but not limited to amounts received from subventions, grants, gifts, judgments, donations, fines, forfeitures, penalties, insurance claim settlements, proceeds of taxes, revenues derived from services provided under contract or agreement which are not specifically set forth in the budget, and charges for current services, which are either in excess of anticipated amounts or are not specifically set forth in the budget, may be made available for specific appropriation by a four-fifths vote of the board at any regular meeting, or at any special meeting of which public notice has been given."

[19]Section 29125 provides: "Transfers and revisions may be made with respect to the appropriations as specified in the resolution of adoption of the budget, except with respect to transfers from the appropriations for contingencies, by an action formally adopted by the board at a regular or special meeting and entered in its minutes. The board may designate a county official to approve transfers and revisions of appropriations, objects, and subobjects within a budget unit."

the same extent that the county board of supervisors may do so. (Gov. Code, § 29741, subd. (d).)[20]

This raises the question of what role the board of supervisors, and hence the auditor, may play in regard to court-ordered defense services. Titsworth asserts that the separation of powers doctrine (Cal. Const., art. III, § 3) precludes a court order that might intrude into the county's power to "weigh the best financial interests of the county against [the benefit to the defendant from] payments for ancillary defense services." However, although the separation of powers doctrine may preclude the court from directly ordering the board of supervisors to appropriate funds (cf. *Mandel* v. *Myers* (1981) 29 Cal.3d 531, 539 [174 Cal.Rptr. 841, 629 P.2d 935], and cases cited holding a court may not compel the Legislature to appropriate funds), the doctrine is of no assistance to Titsworth. The above-cited provisions of the Government Code demonstrate that the Legislature has itself imposed on both the auditor and the local legislative body—the board of supervisors— the duty to pay court-ordered county charges. The court transgresses no constitutional barrier when it orders a county auditor to proceed in accordance with those statutory provisions. Indeed, to accept Titsworth's view would result in violating the very constitutional principle he purports to champion.

Pursuant to the separation of powers doctrine the trial court alone has authority to determine—*in camera*—whether reasonable need for defense services has been shown, and the county is powerless to review confidential defense requests or to modify or veto that determination. (Cf. *Ex parte Widber* (1891) 91 Cal. 367, 370 [27 P. 733] ["The act of the board of supervisors in auditing such demands would be an idle thing, purely *pro forma;* for it would have no authority to reduce or increase the amount of the demand as certified by the judge"]; *Mandel, supra,* 29 Cal.3d at p. 547 ["Our Constitution assigns the resolution of such specific controversies to the judicial branch of government (Cal. Const., art. VI, § 1) and provides the Legislature with no authority to set itself above the judiciary by discarding the outcome or readjudicating the merits of particular judicial proceedings"].) Although the county is free to challenge court orders in the courts,[21] it is impotent to review and reject such orders on its own.

---

[20]That section provides in relevant part: "The auditor shall audit and allow or reject claims in lieu of, and with the same effect as, allowance or rejection by the board of supervisors in any of the following cases: . . . [¶] (d) Expenditures for charges incurred by the county pursuant to the provisions of Chapter 3 (commencing with Section 29600) of this division."

[21]For this limited purpose the county would be entitled to employ independent outside counsel to review the confidential requests, and, if necessary, seek mandate to challenge the court's order. Even in such cases, however, confidentiality must be maintained as to all other parties.

To hold otherwise would be to encourage and facilitate local government intrusion into exclusive powers of the judiciary. As stated above, it is solely a judicial question whether a given defendant shall be afforded requested defense services. Moreover, it is no answer to suggest, as does Titsworth, that if court-ordered defense services are not forthcoming the court can simply dismiss the charges; that "solution" would not only intrude into the court's power to require services authorized by statute and compelled by the constitutional right to effective counsel, it would also effectively vest the auditor and the board of supervisors with power to compel dismissal of a criminal case by unilateral veto of court-ordered defense services in that case. Under no theory would that serve the public interest.

For similar reasons we reject Titsworth's contention that he lacked authority to disburse funds in excess of specific budget appropriations therefor, or that mandated compliance with such orders would violate the separation of powers doctrine. The cited statutes that prohibit disbursement in excess of appropriations expressly except their application to situations "otherwise provided by law." As we have explained above, Government Code section 29741, subdivision (d), together with Government Code section 29602, "otherwise provide."

First, we note that Government Code section 29741, subdivision (d), contains no limitation on the auditor's authority to act independently of the board. (Fn. 20, *ante.*) Moreover, we observe that Government Code section 29122 provides in relevant part: "The board shall approve no claim and the auditor shall issue no warrant for any expenditure in excess of the budget appropriation therefor, *except upon an order of a court of competent jurisdiction,* for an emergency, or as otherwise provided by law." As we have explained above, neither the board of supervisors nor the auditor has authority to approve or disapprove court-ordered defense services. As section 29122 makes clear, a county auditor may not decline to disburse funds ordered by the county superior court to cover ordered services merely because such disbursement would be in excess of the budget appropriation therefor. Indeed, even if there is no specific appropriation to cover such orders, section 29122 authorizes the county auditor to immediately issue warrants against any appropriate budget fund—including the county general fund. Finally, compliance with the court order in this case—even if it requires disbursal of funds in excess of specific appropriations—does not violate, but sustains, the separation of powers doctrine. The right to such funds is established by statute and compelled by the Constitution; disbursal in such situations is authorized by statute. Again, a court transgresses no constitutional barrier when it orders a county auditor to proceed under the statutes.

We thus must conclude that Titsworth possessed the power and the duty to comply with the court's order. ▮▮▮ Now that his role has been explicated, we have no reason to believe the county auditor will again fail to comply with such an order; we therefore deny Corenevsky's petition for a writ of mandate directing dismissal in L.A. 31723.

## C. *Propriety of the Order of Contempt*

▮▮▮ In L.A. 31722 both Titsworth and the People argue that the order of contempt in this case was premature. Titsworth also claims that in any event the order finding him in contempt was error because, inter alia, the elements of contempt were not proved.

We cannot agree that contempt was premature. It is true, as the parties have observed, that we formerly required an auditor in this situation to be made a party to a mandate action before he could be subject to contempt. (*Sargent* v. *Cavis* (1869) 36 Cal. 552, 558; *Ex parte Widber, supra,* 91 Cal. 367, 370-371; *Ex parte Truman* (1899) 124 Cal. 387, 388 [57 P. 223].) These 19th-century cases, however, are inapposite today. They are premised on an assumption that the auditor would not be allowed to fully defend his action on the merits in a contempt proceeding—a view we clearly rejected in *In re Berry* (1968) 68 Cal.2d 137, 148-149 [65 Cal.Rptr. 273, 436 P.2d 273] (under California law, a person may disobey an order and raise his defenses when he is sought to be held in contempt for such disobedience). (See also *Fortenbury* v. *Superior Court* (1940) 16 Cal.2d 405, 407-408 [106 P.2d 411]; *Brady* v. *Superior Court* (1962) 200 Cal.App.2d 69, 73 [19 Cal.Rptr. 242]; *Grant* v. *Superior Court* (1963) 214 Cal.App.2d 15, 19-20 [29 Cal.Rptr. 125].) We therefore hold that the contempt proceeding in this case was not premature.

▮▮▮ It is established that "[i]n reviewing an adjudication of contempt, 'the sole question before us is one of jurisdiction of the trial court to render the judgment under review, and in such a case the review of the evidence is limited to determining whether there was any substantial evidence to sustain the jurisdiction of the trial court.' [Citations.] More recently we said that 'the responsibility of the reviewing court is merely to ascertain whether there was sufficient evidence before the trial court to sustain the judgment and order. The power to weigh the evidence rests with the trial court.'" (*In re Buckley* (1973) 10 Cal.3d 237, 247 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.3d 248].)

▮▮▮ Many of Titsworth's initial contentions have been resolved today against his view. We have explained that he did indeed have the present

ability to comply with the court's order[22] and that he had no legal reason to defer to the county board of supervisors. Nor do we believe that, under the circumstances of this case, the court abused its discretion in ordering payment for defense services in advance of performance of those services.[23]

The gist of Titsworth's defense is that he was denied due process in the contempt proceeding. As we have explained above, however, he was before the court in the hearing on the order to show cause re contempt and had a full opportunity to raise any issue he saw fit. Indeed, he filed briefs and argued the merits of the impending contempt order. Nor do we label improper the fact that the trial court both commenced and adjudicated the proceeding; there is absolutely no evidence that the judge was " 'so "personally embroiled" with the [alleged contemner] as to make [him] unfit to sit in judgment on the contempt charge.' " (*Hawk* v. *Superior Court* (1974) 42 Cal.App.3d 108, 131 [116 Cal.Rptr. 713].) Neither are we compelled to overrule the court's contempt order simply because the judge's declaration was based on information and belief. First, we are not convinced that such allegations are impermissible under the circumstances of this case. (*Freeman* v. *Superior Court* (1955) 44 Cal.2d 533, 537 [282 P.2d 857]; *Bridges* v. *Superior Court* (1939) 14 Cal.2d 464, 478-479 [94 P.2d 983].) Second, even if a technical defect occurred, Titsworth has not claimed— and indeed, on this record he could not show—that such deficiencies in the affidavit prejudiced any "substantial right" or resulted in a "miscarriage of justice." (Code Civ. Proc., § 1211.5, subd. (c).)[24]

We therefore conclude that Titsworth was properly found in contempt. Accordingly, his petition for habeas corpus in L.A. 31722 is denied. Reinstatement of the contempt order is stayed for 10 days from the date of finality of this opinion, however, so that Titsworth may voluntarily comply with the order. In L.A. 31723 and L.A. 31724 the alternative writs are discharged and the petitions for writs of mandate are denied.

---

[22]See *ante,* pages 323-327. The record reveals that at the time in question there was $69,000 in the county administrator's budget and approximately $2.3 million in the general fund.

[23]We also reject as irrelevant Titsworth's claim that the court's order was procured on misrepresentations as to available funds in the court administrator's budget. The record shows that the December 23 order allowed Titsworth to draw the funds from *any* available source within the county treasury.

[24]That section and subdivision provide: "At all stages of all proceedings, the affidavit . . . shall be construed, amended, and reviewed according to the following rules: . . . (c) No such affidavit or statement is insufficient, nor can the trial, order, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the person accused on the merits. No order or judgment of conviction of contempt shall be set aside, nor new trial granted, for any error as to any matter of pleading in such affidavit or statement, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

Kaus, J., Broussard, J., Reynoso, J., Grodin, J., and Lucas, J., concurred.

**BIRD, C. J.**—I respectfully dissent for the reasons set forth in my opinion in *Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 576 [194 Cal.Rptr. 480, 668 P.2d 787].

The application of petitioner Corenevsky for a rehearing was denied August 9, 1984.