Filed 11/19/24  P. v. Mercado CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084260 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FVI21001892) |
| GERMAN MERCADO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino, Shannon L. Faherty, Judge.  Affirmed in part; reversed in part; remanded with directions.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley, and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted German Mercado of attempted murder (Pen. Code,[1] §§ 664, 187, subd. (a); count 1); assault with a firearm (§ 245, subd. (a)(2); count 2); felon in possession of a firearm (§ 29800; count 3); and felon in possession of ammunition (§ 30305; count 4). The jury also found true great bodily injury enhancements (§12022.7, subd. (a)) and firearm enhancements (§§ 12022.5, subd. (a), 12022.53, subds. (b), (c), (d)). In a bifurcated proceeding, the trial court found true that Mercado had two prior strike convictions (§ 1170.12, subds. (a)−(d), 667, subds. (b)−(i)) as well as two prison prior convictions (§ 667, subd. (a)(1)).

Mercado subsequently moved to represent himself, which the court granted. The court later denied Mercado's motions for ancillary fees to pay for a legal runner and an investigator.

The court sentenced Mercado to prison for an indefinite term of 52 years to life plus a determinative term of 10 years in prison, consisting of nine years for count 1, tripled under section 1170.12, subdivision (c)(2)(A)(i); a consecutive 25 years to life pursuant to the firearm enhancement (§ 12022.53, subd. (d)); and two consecutive five year sentences for Mercado's prior prison convictions. (§ 667, subd. (a)(1).)[2]

Mercado appeals, contending the court improperly instructed the jury regarding the use of his prior convictions, the prosecutor committed misconduct by vouching for a witness's credibility, and cumulative error warrants reversal. Mercado also maintains that the trial court violated his Sixth Amendment rights by denying his motion for ancillary funds to hire a legal runner and private investigator.

---

[1]	Statutory references are to the Penal Code unless otherwise specified.

[2]	Under sections 654 and 12022.53, subdivision (f), the court imposed and stayed an additional 95 years in prison.

Additionally, Mercado argues the trial court violated recent amendments to section 1385 created by Senate Bill No. 81 (Senate Bill 81) (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1)[3] in sentencing him.

Finally, with our approval, Mercado filed a supplemental brief arguing that the trial court could not make a true finding that Mercado's section 186.22, subdivision (a) offense from 2010 qualified as a strike prior or a serious felony because the prosecutor failed to prove, beyond a reasonable doubt, the elements of that offense as explained in *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*) and/or as changed by Assembly Bill No. 333 (Assembly Bill 333) (2021–2022 Reg. Sess.).

We agree with Mercado regarding his claim that the court's true finding that his 2010 conviction for violating section 186.22, subdivision (a) constituted a prior strike and a serious felony did not pass muster under *Rodriguez*. We thus remand the matter back to the superior court to allow the prosecution to retry Rodriguez on that issue only. We otherwise affirm the judgment.

## FACTUAL BACKGROUND

On July 2, 2021, deputies responded to a shooting near Puesta Del Sol and Tawney Ridge in Victorville. There, Gilberto B. was lying in the roadway with bullet wounds in the center of his back and behind his left ear.

Later, Christian R. came to the police station with information about the shooting. Christian lived with his mother and younger brother nearby on Calandria Way. Mercado lived next door.

---

[3] The Legislature has amended section 1385, subdivision (c) twice since enacting Senate Bill 81, but the more recent changes to section 1385, subdivision (c) do not affect our analysis of defendant's claim. (See Stats. 2022, ch. 58, § 15; Stats. 2023, ch. 131, § 160.)

On the day of the shooting, Christian returned home from work around noon, changed his clothes, and smoked marijuana in his garage. Mercado came over, told Christian someone had tried to break into his house, and asked for a ride around the corner.

Christian drove Mercado to the intersection of Puesta Del Sol and Barranca Way, a few blocks away. As Christian was about to turn right at the stop sign, Mercado jumped out of the car, crossed in front of the car, and began arguing with a man and a woman. They were yelling in Spanish. Mercado pulled out a gun and shot the man in the abdomen and the face from a few feet away. The man fell to the ground, and the woman screamed and ran off. Christian did not know that Mercado had a gun.

Christian drove off as Mercado chased after the car. When Christian arrived home, he closed the garage and checked on his brother. He saw Mercado return home, but they did not speak. Christian and his mother went to the police station that evening, and Christian told the police what had happened.

Law enforcement executed a search warrant at Mercado's home. They found a black nylon pistol holder in the living room.

At trial, Gilberto, the gunshot victim, did not remember what happened the day he was shot. The first thing he remembered was waking up in the hospital. Gilberto did not know Mercado and could not identify him in court.

Gilberto said that since the shooting, he stutters and "get[s] lost in his words." He struggles with using his muscles and remembering how to do everyday activities such as push-ups and putting on his shoes. Gilberto can no longer see with his left eye or drive a truck for a living.

DISCUSSION

## I. JURY INSTRUCTIONS

### A. *Mercado's Contentions*

Mercado asserts that the trial court did not properly instruct the jury regarding the use of his prior conviction. Specifically, he insists the provided instructions did not sufficiently explain the limited nature of Mercado's previous conviction and that the jury could not use it to conclude that Mercado was a bad person and thus committed the underlying crimes. We are not persuaded.

### B. *Background*

Mercado stipulated to having a felony prior conviction for the purpose of the felon in possession of a firearm (§ 29800; count 3) and ammunition (§ 30305; count 4) charges. The parties agreed to provide the jury with CALCRIM No. 303 on limited purpose evidence, as follows: "During the trial certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and no other. It was stipulated that the defendant has suffered a prior felony conviction."

In addition, the trial court instructed the jury on count 3 with CALCRIM No. 2511, as follows:

> "The defendant is charged in Count 3 with unlawfully possessing a firearm.
>
> "To prove that the defendant is guilty of this crime, the People must prove that:
>
> "1. The defendant possessed a firearm;
>
> "2. The defendant knew he possessed the firearm;
>
> AND
>
> "3. The defendant had previously been convicted of a felony.

5

"A *firearm* is any device designed to be used as a weapon, from which a projectile is expelled or discharged through a barrel by the force of an explosion or other form of combustion.

"The defendant and the People have stipulated, or agreed, that the defendant was previously convicted of a felony. This stipulation means that you must accept this fact as proved.

"Do not consider this fact for any other purpose. Do not speculate about or discuss the nature of the conviction."

The trial court also instructed the jury on count 4 with CALCRIM No. 2591:

"The defendant is charged in Count 4 with unlawfully possessing ammunition.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant possessed ammunition;

"2. The defendant knew he possessed the ammunition;

AND

"3. The defendant had previously been convicted of a felony.

"*Ammunition* means a bullet, cartridge, magazine, clip, speed loader, autoloader, or projectile capable of being fired from a firearm with a deadly consequence. *Ammunition* includes reloaded ammunition.

"The defendant and the People have stipulated, or agreed, that the defendant was previously convicted of a felony. This stipulation means that you must accept this fact as proved.

"Do not consider this fact for any other purpose. Do not speculate about or discuss the nature of the conviction."

6

C. *Applicable Law*

We review a claim of instructional error de novo. (*People v. Pos*ey (2004) 32 Cal.4th 193, 218.) "Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' [Citation.]" (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) In determining whether error has been committed in giving jury instructions, we consider the instructions as a whole and assume jurors are intelligent persons, capable of understanding and correlating all jury instructions which are given. (*Ibid*.) " 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' [Citation.]" (*Ibid*.) "The crucial assumption underlying our constitutional system of trial by jury is that jurors generally understand and faithfully follow instructions." (*People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17.)

D. *Analysis*

Mercado's primary argument challenging the jury instructions is that the jury was not instructed that it could only consider Mercado's previous felony conviction for a limited purpose. This argument is not supported by the record.

Because Mercado stipulated to having a prior felony conviction, the trial court properly instructed the jury with CALCRIM Nos. 2511 and 2591, with the additional supplemental instructions that the jury should "not consider this fact for any other purpose" or "speculate about or discuss the nature of the conviction." Contrary to Mercado's claim, the jury was informed that his felony conviction could only be used for the limited purpose of proving that element in counts 3 and 4. Accordingly, there was no instructional error.

To the extent that Mercado now claims the given instructions were incomplete, it was incumbent on him to request additional instructions during trial. His failure to do so forfeits this contention on appeal. (See *People v. Lee* (2011) 51 Cal.4th 620, 638.)

Mercado argues that we should reach the merits of his argument because the alleged instructional error affected his substantial rights. (§ 1259.) Yet, as we discussed *ante*, we find no error in the manner the court instructed the jury. Thus, forfeiture is appropriate here.

In anticipation of a finding of forfeiture, Mercado argues that he received ineffective assistance of counsel because his trial counsel did not request additional instructions. To establish ineffective assistance of counsel, a "[d]efendant must show that counsel's performance was both deficient and prejudicial, i.e., that it is reasonably probable that counsel's unprofessional errors affected the outcome." (*People v. Castillo* (1997) 16 Cal.4th 1009, 1014–1015, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687, 693–694.) "[I]f the record sheds no light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for an explanation and failed to provide one, or there could be no satisfactory explanation for counsel's performance." (*Castillo*, at p. 1015.) Obviously, given the correctness of the jury instructions, defense counsel could have reasonably concluded that the instructions, as given, adequately advised the jury and that no further instruction was necessary. (See *id*. at p. 1018 [counsel could reasonably conclude pinpoint instruction relating evidence of intoxication to premeditation was unnecessary because instructions adequately advised jury].) Further, on the record before us, we find no prejudice because the jury was explicitly instructed as to the limited use of Mercado's stipulation that he had been convicted of a prior felony, and

8

Mercado has offered no argument to challenge the assumption that the jury understood and followed the instructions. (See *People v. Mickey*, *supra*, 54 Cal.3d at p. 689, fn. 17.)

## II.   PROSECUTORIAL MISCONDUCT

### A.   *Mercado's Contention*

Mercado contends that the prosecutor improperly vouched for a witness's credibility during closing argument. We disagree.

### B.   *Background*

During her closing argument, Mercado's trial counsel emphasized that the prosecution's case hinged entirely on the testimony of Christian. Moreover, defense counsel suggested that Christian had a reason to lie because "he [did not want to] get wrapped up as an accessory to this crime." And she emphasized why Christian was not to be believed.

During rebuttal closing argument, the prosecutor directly addressed defense counsel's assertion that Christian was not believable. To this end, the prosecutor emphasized that Christian, Mercado, and the victim were the only witnesses at the scene of the crime. She pointed out how well Christian knew Mercado and Mercado's family. The prosecutor explained that Christian "ha[d] no motive to lie. Why would he risk getting the Mercados, his next door neighbors, the people that he, his mom, and his 14 year-old brother have to live next to, why would he risk getting them mad? Why would he risk coming in and lying about their son and still have to go back to the house and live next to them."

After discussing the details of Christian's testimony, the prosecutor noted:

> "If he was going to lie, wouldn't he help the person that,
> again, he knows, he knows his mom and dad, he lives next
> door to them instead of the random person, [Gilberto], that

9

he's never met and will probably never know?  Why would he help this random stranger?  He's not helping anyone. He's telling the truth about what happened that day."

Additionally, the prosecutor emphasized that Christian was scared and hesitant to testify, but "he still came in to tell you the truth."  And the prosecutor observed that Christian "didn't ask for this . . . but he came in and told you the truth."

Mercado's trial counsel did not object during the prosecutor's rebuttal closing argument.

C.  *Analysis*

The law governing claims of prosecutorial misconduct is well established.  Prosecutorial misconduct exists " 'under state law only if it involves " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' [Citations.]" (*People v. Earp* (1999) 20 Cal.4th 826, 858.)  In more extreme cases, a defendant's federal due process rights can be violated when a prosecutor's improper remarks so infect the proceedings that it renders the trial fundamentally unfair.  (*Ibid.*)  On appeal, "[t]o prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.  [Citations.]  In conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." (*People v. Frye* (1998) 18 Cal.4th 894, 970 (*Frye*).)  Moreover, "we must view the statements in the context of the argument as a whole." (*People v. Cole* (2004) 33 Cal.4th 1158, 1203.)  Generally, a prosecutor has " 'wide latitude to discuss and draw inferences from the evidence at trial,' and whether 'the inferences the prosecutor draws are reasonable is for the jury to decide.' " (*Ibid.*)  The relevant question is

10

" 'whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' " (*Id.* at pp. 1202–1203.)

Nevertheless, " ' "[a]s a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." ' [Citation.]" (*People v. Huggins* (2006) 38 Cal.4th 175, 251-252.) An exception to this rule provides "[a] defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile. [Citations.]" (*People v. Hill* (1998) 17 Cal.4th 800, 820.) Similarly, failure to request the jury be admonished does not forfeit the issue for appeal if " ' "an admonition would not have cured the harm caused by the misconduct." ' [Citation.]" (*Ibid.*)

Here, Mercado has not established that an objection or request for admonition would have been futile. Thus, Mercado's contention is accordingly forfeited. Anticipating this conclusion, Mercado claims the failure to object constituted ineffective assistance of counsel.

As we discussed *ante*, to win reversal for ineffective assistance of counsel, a defendant must show both that counsel performed below professional norms of competence and that defendant was reasonably likely to have obtained a more favorable result absent counsel's incompetence. (*People v. Maury* (2003) 30 Cal.4th 342, 389.)

Mercado claims that the prosecutor impermissibly vouched for Christian's credibility during the rebuttal closing argument. As our high court has repeatedly held: " '[A] prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their

11

testimony by referring to evidence outside the record. [Citations.] Nor is a prosecutor permitted to place the prestige of her office behind a witness by offering the impression that she has taken steps to assure a witness's truthfulness at trial. [Citation.] *However, so long as a prosecutor's assurances regarding the apparent honesty or reliability of prosecution witnesses are based on the 'facts of [the] record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief,' [the prosecutor's] comments cannot be characterized as improper vouching.'"* (*People v. Stewart* (2004) 33 Cal.4th 425, 499, quoting *Frye, supra,* 18 Cal.4th at p. 971, italics in *Stewart*; accord, *People v. Seumanu* (2015) 61 Cal.4th 1293, 1330; *People v. Boyette* (2002) 29 Cal.4th 381, 433 (*Boyette*).)

Mercado relies on *United States v. Kerr* (9th Cir. 1992) 981 F.2d 1050 (*Kerr*). There, the prosecutor made the following remarks during closing argument: " 'Very frankly, ladies and gentlemen, it is very seldom you get four people, the government was lucky enough to, to have hand-to-hand deals with the defendant like they did here. So it is going to come down to your judging the credibility of each one of those four individuals. Were they hoodwinking [DEA Agent] Mr. Zarndt when I sat there on part of the interviews, were they hoodwinking me, were they hoodwinking the Court, when the Court accepts their plea agreements when they agreed to cooperate?' [¶] [Defense counsel]: 'I object to him putting you in this, Judge. You don't belong.' [¶] THE COURT: 'All right. Sustained. I agree.' [¶] In addition to this exchange, the transcript also reveals other instances of vouching for government witnesses that went unchallenged:

[¶] 'I think he (Jim Ludden) was very candid.'

[¶] 'I don't think it was a pat story, because there are variations.'

[¶] 'I think he (Al Butler) was candid. I think he was honest.'

12

[¶] 'Al Butler was candid with you folks.'

[¶] 'The question is, were they hoodwinking you when they testified? I think not.' " (*Kerr*, *supra*, 981 F.2d at pp. 1052–1053.)

The federal court concluded these statements amounted to misconduct, explaining, "Here, an experienced United States attorney deliberately introduced into the case his personal opinion of the witnesses' credibility. He repeatedly ignored his special obligation to avoid improper suggestions and insinuations. A prosecutor has no business telling the jury his individual impressions of the evidence. Because he is the sovereign's representative, the jury may be misled into thinking his conclusions have been validated by the government's investigatory apparatus." (*Kerr*, *supra*, 981 F.2d at p. 1053.) "[The prosecutor] added fuel to the fire by suggesting in his closing remarks that the district court, in accepting the plea agreements of the witnesses, had been satisfied as to the truthfulness of their proposed testimony. A prosecutor must not abuse his position and his duty to see justice done by invoking the authority of the court. 'That particular form of vouching goes beyond the mere proffer of an institutional warranty of truthfulness; rather, it casts the court as an active, albeit silent, partner in the prosecutorial enterprise.' " (*Ibid.*)

However, in this case, the prosecutor neither stated her personal belief in the witnesses' testimony nor invoked the authority of the court as a "silent partner." She did not repeatedly state that she personally believed in the veracity of the witnesses. Indeed, she, unlike the assistant U.S. Attorney in *Kerr*, did not refer to herself once in commenting on Christian's testimony. Moreover, a review of the statements on which Mercado's relies underscores the differences between *Kerr* and the instant matter.

13

Here, Mercado claims:

> "During [her] final closing argument, the prosecutor repeatedly told the jury that the witnesses testifying on [her] behalf identifying [Mercado] were truthful. The prosecutor argued, as to [Christian], 'He's not helping anyone. He's telling you the truth about what happened that day.' A paragraph later, the vouching continued: 'This is someone who is scared and yet he still came in to tell you the truth.' [Citation.] Finally, as to the victim, the prosecutor stated, 'He didn't ask for this. [Gilberto] didn't ask for this, but he came in and told you the truth.'"

Mercado provides these select portions of the prosecutor's rebuttal closing argument, but he fails to supply any context and presents these arguments as if the prosecutor made them out of whole cloth. As a threshold matter, we note the prosecutor addressed Christian's credibility only *after* defense counsel argued in closing that Christian had motive to lie to avoid being "wrapped up as an accessory" to the attempted murder charge. In other words, counsel was telling the jury Christian was lying about Mercado to ensure he was not criminally linked to the shooting of the victim.

Indeed, defense counsel doubled down on this theme, implying to the jury that Christian was lying to the police to avoid being charged with attempted murder:

> "Again, yes, [Christian] was very upset, very fearful at the time he was speaking to the police at the police station. There's lots of explanation for that. They don't believe him. What if they want some sort of corroborating evidence? What if they test him for gunshot residue? The story contemplates that he shot outside his vehicle some twenty feet away. Would he not be able to explain to the police how he, the shooter, didn't get back in his car?"

So, defense counsel was arguing that Christian had motive to lie on the stand as well as to the police to avoid criminal liability. In fact, counsel

14

suggested that Christian could have been the shooter. In response, the prosecutor sought to bolster Christian's credibility, not by vouching for him but directly countering defense counsel's argument by referring to the evidence.

For example, the prosecutor made the statements, "He's not helping anyone. He's telling you the truth about what happened that day" immediately after explaining to the jury that Christian had no motive to lie to benefit the victim, a stranger to him, when he lived next to Mercado and knows Mercado's parents. Thus, the prosecutor was not vouching for Christian. She merely was refuting defense counsel's contention that Christian had a reason to lie.

Additionally, when the prosecutor told the jury that Christian was "scared and yet he still came in to tell you the truth," she was basing this argument on the evidence presented at trial. Christian testified that he was nervous to testify at trial. He agreed that testifying in court was difficult for him because he knew "Mercado as [his] neighbor." He further stated that he "just want[ed] to get everything out of the way as soon as possible." Thus, considering this context, the prosecutor's statement did not reflect her personal beliefs about Christian's veracity, nor did it suggest she had personal knowledge that was not in evidence.

Finally, the last comment on which Mercado relies does not give us pause: "[Gilberto] didn't ask for this, but he came in and told you the truth." Mercado claims that the prosecutor was vouching for the credibility of Gilberto, but that argument is not supported by the record or the context in which the prosecutor made the statement. Gilberto was the victim of the shooting. However, at trial, he testified that he did not remember anything about the day he was shot. And Gilberto could not even identify Mercado at

15

trial.  Instead, the prosecutor appeared to be emphasizing again that Christian told the truth at trial, based upon the evidence presented:

> "We have that young man helping him out, being a good neighbor, driving him around unsuspecting, didn't know that the defendant had a gun, didn't know that the defendant was going to jump out of the car. He said that the car was still moving when the defendant jumped out. He didn't know that the defendant was going to confront [Gilberto], a person who he also doesn't know, had these words, and see the defendant shoot him.
>
> "He didn't ask for this.  [Gilberto] didn't ask for this, but he came in and told you the truth."

As the California Supreme Court stated in *Boyette*, *supra*, 29 Cal.4th at page 433, "Although a prosecutor may not personally vouch for the credibility of a witness, a prosecutor may properly argue a witness is telling the truth based on the circumstances of the case.  [Citation.]  Here, although the prosecutor argued [the witness] was credible, she did so in the context of his being an eyewitness to the crime and argued that aspects of his testimony suggested he was telling the truth.  This was permissible argument."  As in *Boyette*, the prosecutor's comments here did not suggest she "was privy to undisclosed information and thus constituted improper vouching for [the witness's] credibility.  It was, instead, simply argument based on inferences from the evidence presented." (*Ibid.*)  In short, the prosecutor's arguments regarding Christian's credibility was tied to evidence in, and reasonable inferences from, the record.  There was no misconduct.

Because there was nothing improper about the prosecutor's rebuttal argument, Mercado cannot show that his attorney provided ineffective assistance by failing to object to the prosecutor's argument.

16

## III. CUMULATIVE ERROR

Mercado also argues that the multiple alleged errors outlined *ante* cumulatively require reversal. We disagree.

" '[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error.' " (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.) We have rejected Mercado's two asserted errors. Because there were no other actual or assumed errors, much less a series of errors that warrants reversal, we conclude there was no cumulative error. (See *People v. Reed* (2018) 4 Cal.5th 989, 1018 ["Because we have found but one error—which was harmless—there is no prejudice to cumulate."].)

## IV. MOTION FOR ANCILLARY SERVICES

### A. *Mercado's Contention*

Mercado asserts the trial court abused its discretion and violated his Sixth Amendment right to present a defense when it denied his motions for ancillary funds to hire a legal runner and an investigator to assist with his motion for a new trial. We are not persuaded that the trial court abused its discretion.

### B. *Background*

After the jury returned its verdict but before sentencing, Mercado requested to represent himself. He offered the following explanation regarding why:

> "Because there's certain evidence that I would like to enter and the public defender's office didn't want to help me with that matter. So I think I would—I'm better off doing it on my own."

In response to Mercado's request, the trial court provided the necessary admonitions and discussed the disadvantages of self-representation. The

court also expressed concern that Mercado was seeking to represent himself out of frustration. Mercado replied:

> "No. It's just my main thing I'm going pro per is just to pretty much subpoena the people that testified on me to prove that it was a false witness who testified on me. And I was getting no help with that from the public defender's office. They were just giving me the runaround on certain things. So I would rather just get a private investigator and bring those individuals in so that they can—so we can find out the truth on the false witness that testified on me."

Mercado also further emphasized that he was not frustrated with the public defender's office, explaining that "I'm telling them who was the one that testified on me and they went and interviewed a whole other witness, somebody who I didn't even say was involved in it."

The trial court then asked Mercado what he intended to do, considering where his case was in the process. Mercado explained:

> "Subpoena witnesses and just—pretty much what happened, your Honor, was the victim's brother was the one who testified on me. And I was telling [defense counsel] that, on what I know on that behalf, and she wasn't going, reaching out to them. She interviewed a whole other brother who I never said was involved and testified on me, and they haven't went over there and pretty much go to the bottom of that.
>
> "So I would rather do it myself, subpoena witnesses and just question them myself to find out what really happened so that I can get a mistrial motion and process."

The court ultimately accepted Mercado's waiver to his right to counsel and allowed him to represent himself. Per Mercado's request, the court scheduled the next hearing for 30 days later. The court asked Mercado what he intended to do at the next hearing, to which Mercado responded as follows: "To see—I'm still trying to figure this out as I go. I've never represented

18

myself, so what I'm trying to do is put motions and to subpoena people and things of that nature." The court told Mercado that it would not "help with any of that" and made sure Mercado understood he would be sentenced at the next hearing (January 6, 2023).

At the January 6 hearing, the court asked the parties if they were ready to proceed with sentencing. The prosecutor responded in the affirmative. The court and Mercado then engaged in the following exchange about Mercado's preparedness for sentencing:

> "THE DEFENDANT: No. I actually need to waive some time because I need a private investigator. I need the Court to assign me a private investigator and I need a legal runner.
>
> "THE COURT: You need to file those documents. I can't do that for you.
>
> "THE DEFENDANT: Yeah. That's why I'm letting the Court know that that's what I need to do.
>
> "THE COURT: That's not how it works. You don't just tell me. What I need to do is go forward with sentencing here.
>
> "THE DEFENDANT: I barely went pro per, and I need to properly—I'm trying to put in a motion for a mistrial and I can't properly do that without having a private investigator and a legal runner to assist me in those matters. So I haven't been able to get neither because I haven't got a private investigator to help me.
>
> "THE COURT: I told you when you decided to go pro per that I was not going to help you with any of these things.
>
> "THE DEFENDANT: I'm not asking you to help me. I'm telling you what I need.
>
> "THE COURT: You're the one that has to file motions for those. [¶] Here's what I'm going to do. I'm going to set this out thirty days. If there are not motions filed by that time we will be proceeding with sentencing. [¶] Come back

19

on February the 3rd at 8:30 in the morning for pronouncement of judgment. And we will put that in the minute order, the Court makes that representation. [¶] So if you have things to do, you need to get them done. Otherwise, we're sentencing February 3rd.

"THE DEFENDANT: I can't give no time for that? Before that you guys were pressing my time forward and forward and forward, and now I need a little bit more time to figure this out and you guys want to hurry up and sentence me?

"THE COURT: It's not about figuring it out. You decided to represent yourself.

"THE DEFENDANT: Yes. I'm representing myself but I need to gather certain things. What happened on my trial was a false witness testified on the stand.

"THE COURT: We're not going to talk about that.

"THE DEFENDANT: Why can't we talk about that? That's what happened at trial.?

"THE COURT: You need to file a motion.

"THE DEFENDANT: I know, but—

"THE COURT: Mr. Mercado, we're not going to argue. You need to file it in a motion. I would not let an attorney stand here and argue about what happened at the trial; therefore, I am not letting you.

"THE DEFENDANT: I'm not arguing with you. I'm just letting you know what happened and the motion that I need to submit. I need to have it on record and you're not letting me talk.

"THE COURT; No, because it needs to be a written motion. If you were an attorney you would know that a motion for new trial would be written and not an oral motion. You're the one that does not have an attorney.

"THE DEFENDANT: You're stopping me from taking on my rights.

20

"THE COURT:  You have to understand what I'm saying. You are trying to make an oral motion.  You cannot make an oral motion for a new trial.

"THE DEFENDANT:  Being a judge you're going to let a false witness testify?

"THE COURT:  Sir, you are more than welcome to have an attorney represent you.  I am happy to reappoint one for you right now.

"THE DEFENDANT:  So because I'm representing myself that's the issue here?

"THE COURT:  The issue is, you chose—

"THE DEFENDANT:  I talked to my public defender and they weren't trying to assist me on these matters at all. They said that they couldn't help me on this false witness that testified on the stand.

"THE COURT:  I understand.  The representation was actually made.

"THE DEFENDANT:  I had to go pro per so that I can help myself, but in order to do that I need a private investigator in order to get the evidence I need to submit the motion for a mistrial.

"THE COURT:  I hear all of this, and this is everything that I told you was going to happen when you decided to represent yourself.

"THE DEFENDANT:  I know.  And I need time to get it together.

"THE COURT:  Right.  I'm giving you thirty days.  If I don't see that you've made any progress in those thirty days—if you have made progress we'll talk about more time.  If we're just here and you're asking for more time and not doing anything, we're done and sentencing you.  I would give the same admonition to the attorney.  [¶]  I will see you back on February 3rd."

At the February 3, 2023 hearing, the court asked the parties if they were ready to proceed with sentencing. Although the prosecutor indicated that she was, Mercado said he was not ready and informed the court that he had two motions to file: "One for a legal runner [motion for funds under section 987.2], and one for the notice and motions for multiple punishment." Mercado also said that he was attempting to "get[ ] a private investigator" but the ones he tried to contact would not return his call.

The trial court allowed Mercado to submit the motions at the February 3 hearing. The court also ordered that Mercado be provided with stamped envelopes to mail any additional motions to the court. However, the court again advised Mercado that if no progress was made by the next appearance then sentencing would proceed.

The court denied Mercado's motion for funds under section 987.2 to hire a legal runner because the motion did not comply with numerous sections of the "Superior Court of California, County of San Bernardino, Penal Code § 987.2 Appointed Service and Expenditure Rules, Funding Application and Payment Procedure, rev. October 18, 2013." In addition, the motion did not comply with the court's Local Rules 1418 and 1419. The order directed Mercado to the specific rules and statutes relevant to Mercado's motion that could be found on the court's website.

On February 23, 2023, Mercado filed a motion for funds to hire a private investigator. The court denied this motion a day later because the court found the motion did not comply with the court's requirements as well as various local rules.

At the March 3, 2023 hearing, Mercado again informed the court that he still was not prepared to proceed with sentencing. He further pointed out that he had, two weeks prior, filed a motion for funds to hire a private

investigator.  The court noted that Mercado's motions had been denied "because [he] didn't do them right."  The court further observed that it had continued sentencing twice (once on January 6 and again on February 3) to allow Mercado to file his motions.  Mercado responded that he was representing himself for the first time and needed "time to properly be able to defend [him]self."  The court commented:

> "You were told—when you decided you wanted to represent yourself, you were told that there would be down sides to this.  You would be held to the standard of an attorney.  If any one of these attorneys in this courtroom was told this is going forward at the next hearing, it would go forward at the next hearing, and I gave you twice."

The court then proceeded to sentence Mercado.

C.  *Legal Principles*

An indigent defendant is entitled to the appointment of trial counsel and is generally entitled to ancillary services that are reasonably necessary in preparation of a defense.  (*Ake v. Oklahoma* (1985) 470 U.S. 68, 76–77; *Corenevsky v. Superior Court* (1984) 36 Cal.3d 307, 319 (*Corenevsky* ).)  A right to ancillary defense services will arise if the defendant "has demonstrated the need for such services by reference to ' "the general lines of inquiry he wishes to pursue, being as specific as possible." ' [Citations.]" (*Corenevsky*, at p. 320, fn. omitted.)  "Defendant also must establish a likelihood that the evidence sought to be procured by the funds would be admissible, as ' "there is no point in spending money to obtain inadmissible evidence." ' " (*People v. Thomas* (2023) 14 Cal.5th 327, 353, quoting *People v. Clark* (2016) 63 Cal.4th 522, 631.)

The defendant's motion "can be granted only if supported by a showing that the investigative services are reasonably necessary." (*Corenevsky*, *supra*, 36 Cal.3d at p. 320.)  The trial court's order regarding such services is

23

reviewed for abuse of discretion. (*Id.* at p. 321.) "[A]n appellate court will reverse such an order only when 'the circumstances shown compelled the [trial] court to exercise its discretion only in one way, namely, to grant the motion.' [Citation.]" (*Id.* at p. 323.)

D. *Analysis*

Here, Mercado claims that the trial court denied his two motions for ancillary services because he did not file proper motions, but Mercado accuses the court of "citing to non-existent subdivisions and paragraphs[.]" Not so. In both its written orders, the court explicitly detailed what provisions of the "Superior Court of California, County of San Bernadino, Penal Code § 987.2 Appointed Service and Expenditure Rules, Funding Application and Payment Procedures" (Application Procedures) that Mercado did not comply with. And both orders referred Mercado to the San Bernadino County Superior Court website for the Application Procedures and other relevant Local Rules.

Here, Mercado does not claim that either of his motions satisfied the requirements of the Application Procedures or that he did not have to comply with those procedures. Rather, he argues that the court did not properly view his motions with the "considerable liberality" caselaw requires. Yet, the language on which Mercado relies does not apply to the circumstances before us. In addressing a trial court's consideration of a motion for ancillary services, our high court observed:

> "Although such motions can be granted only if supported by a showing that the investigative services are reasonably necessary [citation], it has been recognized that because of the early stage at which the request typically arises, it will often be difficult for counsel to demonstrate a clear need for such funds. [Citation.] Therefore the trial court should, in appropriate circumstances, 'view with considerable liberality a motion for such pre-trial assistance.' [Citation.]" (*Corenevsky, supra,* 36 Cal.3d at p. 320.)

24

Thus, the basis for the "considerable liberality" language assumes that a motion for ancillary funds occurs early in a case (i.e., before trial). That is not the case here where Mercado is asking for funds after the jury rendered its verdict and right before the court was to sentence him. We therefore see no abuse of discretion in the trial court allegedly failing to consider Mercado's two motions with "considerable liberality."[4]

Mercado also raises two other challenges to the court denying his motions. First, he claims that there is no indication in the record that he was served with the orders. Although we agree there are no proofs of service in the record for the subject orders, we note that the court orally informed Mercado that his motions had been denied because he had not completed them properly. At that time, Mercado did not object or otherwise complain that he did not receive the orders. Rather, he stated that he needed more time because "it was the first time representing [him]self." The court reminded him that he chose to represent himself and had already had the benefit of two continuances.

Second, although he acknowledges that the orders pointed him to the court's website where the Application Procedures were located, Mercado asserts that there is no indication in the record that he had access to a computer in jail by which to retrieve those procedures. However, there is no suggestion that Mercado informed the court that he lacked access to a computer. Further, as the People point out, Mercado's motions appear to

---

[4]     Mercado has provided no authority, nor have we found any, that supports his claim that he was entitled to ancillary services to file a motion for new trial. It is at least arguable that Mercado did not have such a right. However, because the People assume that Mercado may have been entitled to the requested services, and we find, as we explain *post*, that Mercado has not suffered prejudice, we need not decide this threshold issue.

have been drafted on a computer as they are on pleading paper and include citations to the proper Penal Code section and relevant case law.

Moreover, even if we were to assume that the trial court abused its discretion in denying Mercado's motions for ancillary services, we are not persuaded by Mercado's argument that he was prejudiced by the denials. (See *People v. Guerra* (2006) 37 Cal.4th 1067, 1086.) Here, Mercado argues the ancillary services were necessary to file a motion for a new trial. Thus, without those services, he claims he was prejudiced because he could not prepare his desired motion. Underlying Mercado's argument, however, is the assumption that his motion for a new trial would be successful or at the very least, possess some merit. After all, a defendant has not suffered prejudice if he or she is somehow prohibited from filing a meritless motion.

Mercado's proposed motion for a new trial appears to have been based on the theory that a witness testified falsely against him. However, the identity of this lying witness is unclear. When explaining to the court why he wanted to represent himself, Mercado stated that he wanted to "[s]ubpoena witnesses and just—pretty much what happened, your Honor, was the victim's brother was the one who testified on me." Mercado then faulted his trial attorney for interviewing "a whole other brother who [Mercado] never said was involved and testified on me." So, Mercado informed the court that he wanted to "subpoena witnesses and just question them myself to find out what really happened so that I can get a mistrial motion and process." Neither Mercado's statements to the court nor his motions for ancillary services shed any light on who Mercado believes testified falsely against him and who he intended to subpoena.

Only four witnesses testified during trial: two members of law enforcement, Christian, and Gilberto. Thus, the brother of the victim

26

(Gilberto) who Mercado claims testified against him did not testify at trial. Mercado does not identify this brother in his motions for ancillary services or at any hearing in the trial court. Indeed, the People and Mercado's appellate counsel do not agree regarding Mercado's proposed target for his subpoena. The People presume that Mercado "sought an investigator to interview a witness to prove a trial witness, likely Christian, was lying." Mercado's appellate attorney interprets the People's argument as opining that Mercado wanted to subpoena Christian. Mercado's appellate attorney disagrees, arguing that Mercado wanted to subpoena Gilberto.

It makes little sense that Mercado would seek to subpoena either Christian or Gilberto, both of whom testified at trial and were subject to cross-examination. Instead, Mercado makes a vague reference to "the victim's brother who testified on [him]." But as we discussed *ante*, Gilberto's brother, to the extent he has one, did not testify against Mercado. And there is no indication in the briefs or the record of the identity of this mystery witness that Mercado seeks. Without more information, it appears that Mercado's proposed motion relies on someone he believes might be able to show that a witness at trial lied. On the record before us, Mercado's new trial theory rests on no more than speculation, which does not support a claim of prejudice.

## V.   SENATE BILL 81

### A.   *Mercado's Contentions*

Mercado raises two issues concerning Senate Bill 81, which amended section 1385. First, he claims that the trial court was required to apply Senate Bill 81 to his prior strikes. Second, he argues that the trial court erred by not dismissing the firearm enhancement and at least one of the prison priors. We are not persuaded.

27

B.  *Analysis*

Whether Senate Bill No. 81's amendments to section 1385 apply to prior strike convictions is a question of statutory interpretation, which we review de novo.  (*People v. Tirado* (2022) 12 Cal.5th 688, 694 (*Tirado*).)

Section 1385 governs a trial court's discretion to dismiss various elements of an action or sentence on its own motion.  This includes the ability to dismiss all or any portion of an action, including enhancements and prior strikes.  (§ 1385, subds. (a)–(c); *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 508.)  Under section 1385, subdivision (a), the trial court "may . . . in furtherance of justice, order an action to be dismissed."  This authority includes the power to "strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony . . . ."  (*People v. Williams* (1998) 17 Cal.4th 148, 158.)

Effective January 1, 2022, Senate Bill 81 added subdivision (c) to section 1385 to give trial courts more discretion to strike sentence enhancements under certain conditions.  (See *People v. Burke* (2023) 89 Cal.App.5th 237, 242-243 (*Burke*).)  As relevant here, section 1385, subdivision (c) provides, in part:  "(c)(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.  [¶]  (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds

that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(1)−(2), as amended by Stats. 2021, ch. 721, § 1.)

In *Burke*, *supra*, 89 Cal.App.5th 237, our colleagues in the Third Appellate District Court of Appeal considered whether the changes enacted by Senate Bill 81 applied to prior strikes as well as enhancements. They concluded Senate Bill 81 did not apply to strikes. In reaching that conclusion, the *Burke* court explained that "[t]he term 'enhancement' has a well-established technical meaning in California law," specifically, that it is " ' "an additional term of imprisonment added to the base term." ' " (*Burke*, at p. 243.) Meanwhile, "[i]t is equally well established that the Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense." (*Ibid.*, citing *Romero*, *supra*, 13 Cal.4th at p. 527.) The court "presume[d] the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme such as the Three Strikes law." (*Burke*, at p. 243.) Therefore, because "[t]he Legislature did not otherwise define the word 'enhancement' in section 1385," and "the statutory language is clear and unambiguous," the court opted to follow that language without considering any legislative history materials. (*Id.* at p. 243.)

We agree with *Burke* and conclude that "section 1385, subdivision (c)'s provisions regarding enhancements do not apply to the Three Strikes law." (*Burke*, *supra*, 89 Cal.App.5th at p. 244.)

Mercado argues *Burke* was wrongly decided and urges us not to follow it. We decline Mercado's invitation. There is no split of authority on this issue among the California Courts of Appeal post *Burke*.

The First District Court of Appeal, Division Five in *People v. Olay* (2023) 98 Cal.App.5th 60 (*Olay*) more recently examined additional

29

arguments—based on section 1385, subdivision (c)(2)(G)—that were not addressed by the *Burke* court.  (*Olay*, at pp. 66−69.)  In *Olay*, the court analyzed the legislative history of Senate Bill 81 and found it supports the conclusion that the Legislature intended "enhancement" to accord with its accepted meaning.  That court was "skeptical the Legislature would have expressed an intent to reject the well-established legal meaning of 'enhancement' in such a roundabout manner by obliquely referencing 'juvenile adjudications' as one of the relevant mitigating circumstances" and that "[t]he legislative history confirms the Legislature had no such intent." (*Olay*, at p. 67.)  The court noted that the legislative history includes a statement that "[a]n enhancement differs from an alternative penalty scheme," and "[t]he presumption created by this bill applies to enhancements, but does not encompass alternative penalty schemes."  (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 81 (2021-2022 Reg. Sess.) as amended Apr. 27, 2021, pp. 5−6.)  "A more unambiguous statement of the Legislature's intent to adopt the legal meaning of enhancement for section 1385, subdivision (c) can hardly be imagined."  (*Olay*, at p. 67.)  Moreover "subsequent history makes no reference whatsoever to the Three Strikes law or any other alternative sentencing scheme."  (*Id*. at p. 68.)

Thus, the legislative history only reinforces that "enhancement" as used in section 1385, subdivision (c), is not ambiguous.  It is therefore not warranted to resort to the canon against surplusage.  "If the plain language of a statute or regulation is clear and unambiguous, our task is at an end and there is no need to resort to the canons of constructions or extrinsic aids to interpretation."  (*Butts v. Board of Trustees of California State University* (2014) 225 Cal.App.4th 825, 838.)

30

As noted *ante*, the *Olay* court "still agree[d] with *Burke's* ultimate conclusion—that section 1385, subdivision (c) does not apply to the Three Strikes law." (*Olay*, *supra*, 98 Cal.App.5th at p. 67.)  We agree with the holdings in *Burke* and *Olay* that section 1385, subdivision (c)'s provisions regarding enhancements do not apply to the Three Strikes law.  (*Burke*, *supra*, 89 Cal.App.5th at p. 244; *Olay*, at p. 69; accord *People v. Tilley* (2023) 92 Cal.App.5th 772, 776, fn. 2.)  As such, we conclude the trial court did not err when it did not apply Senate Bill 81 to strike Mercado's prior strikes.

Mercado's next argument under Senate Bill 81 fares no better. Mercado contends the trial court's sentence in this case violates current section 1385, subdivision (c)(2)(C) because the use of "shall" in that provision mandates the dismissal of any enhancement that would result in a sentence of over 20 years.  We are not persuaded.

Section 1385 has long permitted trial courts to dismiss sentence enhancements, or the additional punishment associated with such enhancements, if doing so is in the furtherance of justice.  (See former § 1385, amended by Stats. 1986, ch. 85, § 2, eff. May 6, 1986.)  As we discussed *ante*, Senate Bill 81 amended section 1385 to not only grant trial courts the authority, but to also impose a duty upon them to strike or dismiss certain sentence enhancements when it is in the interest of justice to do so.  As relevant here, section 1385, subdivision (c) now states in pertinent part:

> "(c)(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

> "(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances

31

> weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.

The statute outlines nine mitigating circumstances the court must consider, including as relevant herein:  "(C) The application of an enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed." (§ 1385, subd. (c)(2)(C).)  Subdivision (c) of section 1385 applies to all sentences occurring after its effective date. (§ 1385, subd. (c)(7).)

"[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law.  In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.  A construction making some words surplusage is to be avoided.  The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387.)  As stated *ante*, we review questions of statutory interpretation de novo.  (*Tirado*, *supra*, 12 Cal.5th at p. 694.)

Two of our sister courts have persuasively concluded that the "shall be dismissed" language in subdivision (c)(2)(C) of section 1385 does not require the trial court to dismiss an enhancement if doing so would endanger public safety.  (*People v. Lipscomb* (2022) 87 Cal.App.5th 9, 17–21 (*Lipscomb*); *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295–297 (*Mendoza*).)

32

The appellate courts in both *Lipscomb* and *Mendoza* determined that the language "the enhancement shall be dismissed" where "application of an enhancement could result in a sentence of over 20 years" per section 1385, subdivision (c)(2)(C), does not require the trial court to dismiss an enhancement if doing so would endanger public safety. The *Lipscomb* court understood it "cannot read [parts of the statute] in isolation" but "must consider the statute as a whole." (*Lipscomb*, *supra*, 87 Cal.App.5th at p. 18.) In doing so, the circumstance "that the enhancement could produce a sentence over 20 years . . . does not apply at all where the court finds that striking the enhancement would endanger public safety." (*Ibid*.) The court determined that "[t]o the extent that the statute is ambiguous, indicators of the Legislature's intent support [this] reading" because the "versions of [Senate Bill 81] confirm the Legislature's intent that the trial court retain the ability to impose an enhancement where failure to do so would endanger public safety." (*Id*. at pp. 18–19.) Following review of the various versions considered by the Legislature in enacting Senate Bill 81, the *Lipscomb* court concluded that "every version of the statute—including . . . the current one— expressly empowered the court to impose the enhancement upon a finding that dismissing it would endanger public safety." (*Lipscomb*, at p. 19.)

In *Mendoza*, the appellate court noted that interpreting section 1385, subdivision (c)(2)(C) as requiring dismissal of an enhancement "gives no effect to the clause 'unless the court finds that dismissal of the enhancement would endanger public safety' " in section 1385, subdivision (c)(2). (*Mendoza*, *supra*, 88 Cal.App.5th at p. 296.) The court recognized it must "avoid interpretations that render statutory language surplusage" and "also must avoid interpretations that lead to absurd results." (*Ibid*.) Under the defendant's interpretation, "the statute required the sentencing court to

endanger public safety," which the court found "cannot be what the Legislature intended." (*Ibid*, italics omitted.)

Although Mercado cites both *Lipscomb* and *Mendoza*, he does not explain why we should not follow those cases. Nor does he attempt to distinguish them whatsoever. Moreover, we believe *Lipscomb* and *Mendoza* were correctly decided, and we follow them on the issue before us. Thus, we conclude that section 1385, subdivision (c)(2)(C) does not require dismissal of a sentencing enhancement where the trial court concludes dismissal would not be in the furtherance of justice and/or would endanger public safety. (§ 1385, subd. (c)(2).)

Nonetheless, Mercado essentially argues that even if we follow *Lipscomb* and *Mendoza*, the trial court did not make the necessary dangerousness finding. In this sense, he argues that the court did not realize it had discretion to strike the subject enhancements under section 1385 and thus we should remand the matter to allow the court to exercise its discretion. We disagree.

Here, the trial court specifically acknowledged that it had discretion to stay the 25-year firearm enhancement but declined to do so "because of the high level of violence that was involved in this case." So, although the court did not make an explicit finding that dismissing the firearm enhancement would endanger the public, the court clearly believed Mendoza's crimes were too violent to warrant a lesser sentence. As such, we struggle to contemplate how an analysis under section 1385, subdivision (c)(2)(C) would have caused the court to reach a contrary result. In other words, if the court found that Mendoza's crime was too violent to warrant a stay of the firearm enhancement, it logically follows that it would not have determined that the same enhancement should have been dismissed based on a different statute.

34

(Cf. *People v. Walker* (2024) 16 Cal.5th 1024, 1038.)  In short, the record clearly indicates that the trial court would have reached the same conclusion even if it evaluated the enhancements under section 1385.  Remand, therefore, is not warranted.[5]  (See *People v. Barber* (2020) 55 Cal.App.5th 787, 814.)

## VI.  THE PRIOR STRIKE AND SERIOUS FELONY

### A.  *Mercado's Contention*

In his supplemental brief, Mercado asserts that the trial court's true findings that his 2010 conviction for violating section 186.22, subdivision (a) qualified as a prior strike and serious felony must be reversed and remanded because the evidence presented was insufficient.

### B.  *Background*

The prosecution alleged that Mercado suffered a section 186.22, subdivision (a) conviction on June 11, 2010, in San Bernardino Superior Court case No. FSB 903904.  The amended information alleged that this prior conviction qualified as a prior strike (§§ 667, subds. (b)−(i), 1170.12, subds. (a)−(d)) and a serious felony (§ 667, subd. (a)(1)).

At the bench trial on the prior convictions, the court stated:

> "Reviewing Exhibit [21], this is a certified prior packet for FSB903904.  Contained within was a certified minute order from June 11th, 2010 wherein the defendant pled guilty to Count 7 of the indictment.  Count 7 is Penal Code

---

5      We observe that Mercado argues that the trial court should have struck one of his prison priors under section 1385, subdivision (c)(2)(C).  Yet, the prison prior resulted in an additional five-year sentence.  Mercado does not explain how that five-year sentence falls under the subject subdivision.

Section 186.22(a) which does qualify as a serious felony under Penal Code Section 1192.7."[6]

The court then found that Mercado's conviction under section 186.22, subdivision (a) comprised a prior strike conviction.[7]

In addition, the indictment in case No. FSB 903904 indicates that Mercado was one of about 37 named defendants. Indeed, for count 7 (§ 186.22, subd. (a)), to which Mercado pleaded guilty, the indictment names over 30 other defendants in addition to Mercado.

C. *Analysis*

Mercado challenges the trial court's finding that his prior conviction for violating section 186.22, subdivision (a) constituted a prior strike and a serious felony for two reasons. First, he claims that his plea, standing alone, does not prove that he committed a violation of section 186.22, subdivision (a) as that crime was understood after *Rodriguez, supra*, 55 Cal.4th 1125. Thus, he urges us to follow *People v. Strike* (2020) 45 Cal.App.5th 143 (*Strike*) and conclude that his prior conviction under section 186.22, subdivision (a) cannot constitute a prior strike or serious felony. Second, Mercado argues that the trial court's findings must be reversed because of changes in the law under Assembly Bill 333. The People do not address these arguments whatsoever.

1. *Rodriguez* and *Strike*

Mercado contends the trial court's true findings on the prior strike and serious felony allegation must be reversed because the evidence offered to

---

[6]    The trial court referred to the subject exhibit as Exhibit 20. Apparently, the court misspoke. Exhibit 21 corresponds to case No. FSB 903904.

[7]    The trial court made a similar finding regarding another felony for which Mercado had been convicted in an earlier case. Because that conviction is not challenged here, we do not address it further.

prove his underlying 2010 conviction for active gang participation (§ 186.22, subd. (a)) is insufficient to establish that he committed the offense with another active member of his gang, as provided in *Rodriguez*, *supra*, 55 Cal.4th 1125. We agree.

" 'The People must prove all elements of an alleged sentence enhancement beyond a reasonable doubt. [Citation.]' [Citation.] In identifying the facts proven by the existence of a prior conviction, '[t]he trial court's role is limited to determining the facts that were necessarily found in the course of entering the conviction. To do more is to engage in "judicial factfinding that goes far beyond the recognition of a prior conviction.' " [Citation.] 'On review, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence. In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt.' [Citation.]" (*People v. Farias* (2023) 92 Cal.App.5th 619, 641, review granted Sept. 27, 2023, S281027 (*Farias*).)

Section 186.22, subdivision (a) makes it unlawful to "actively participate[ ] in a criminal street gang with knowledge that its members engage in, or have engaged in, a pattern of criminal gang activity, and [to] willfully promote[ ], further[ ], or assist[ ] in felonious criminal conduct by members of that gang." Pursuant to section 1192.7, "any felony offense, which would also constitute a felony violation of section 186.22," qualifies as both a prior serious felony and a prior strike offense. (See §§ 667, subds. (d)(1), (e), 1192.7, subd. (c)(28).)

In 2012, our high court determined that section 186.22, subdivision (a) is not violated when an active gang member commits a felony offense but acts

37

alone.  (*Rodriguez*, *supra*, 55 Cal.4th at p. 1139.)  In *Strike*, *supra*, 45 Cal.App.5th 143, our colleagues in Division Three of this court recognized that this "change in the interpretation of section 186.22(a) rendered a pre-*Rodriguez* conviction inconclusive on its face as to whether it qualified as a strike." (*Strike*, at p. 150.)  In *Farias*, *supra*, 92 Cal.App.5th 619, review granted, the Third Appellate District reached the same conclusion regarding section 667, subdivision (a) prior serious felony allegations.  (*Farias*, at pp. 647−648.)

The defendant in *Strike* pleaded guilty in 2007 to active gang participation under section 186.22, subdivision (a).  After he admitted the prior conviction in a 2017 prosecution, the trial court found the admission extended to the elements of section 186.22, subdivision (a) "as now understood" based on the allegations in the 2007 charging document that a codefendant was a member of the defendant's gang.  (*Strike*, *supra*, 45 Cal.App.5th at pp. 146–147.)  Because the record did not show the defendant had admitted the factual allegations contained in the 2007 charging document as part of his guilty plea, the court of appeal concluded that the trial court had engaged in impermissible factfinding.  (*Id.* at pp. 152–153.)  The court reasoned that the trial court had " 'invade[d] the jury's province by . . . mak[ing] disputed findings about "what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct." ' " (*Id.* at p. 152.)  The matter was remanded for a new hearing on the prior strike for the prosecution to demonstrate, based on the record of the 2007 proceeding, that the defendant's guilty plea encompassed a relevant admission in light of *Rodriguez*'s clarification that the defendant must have

committed the offense with at least one other gang member.[8] (*Strike*, at p. 154.)  A similar result was reached in *Farias* regarding a prior serious felony conviction allegation for which there was no evidence offered to prove the defendant had admitted committing the offense with another active member of his gang.  (*Farias*, *supra*, 92 Cal.App.5th at pp. 647−648, review granted.)

Here, the prosecution offered no evidence to prove Mercado acted with another member of his gang in committing the section 186.22, subdivision (a) offense upon which his prior strike and serious felony conviction allegations are based.  The prosecution introduced a certified prior conviction and commitment packet, consisting of an indictment dated September 22, 2009, and minute order dated June 11, 2010.  Although the indictment is aimed at 37 named defendants (strongly suggesting that Mercado was not acting alone), it is not clear from the minute order that Mercado incorporated or agreed to any portion of the indictment in pleading guilty.  Rather, the minute order states that Mercado was informed of the elements of the charge, a factual basis was established, and Mercado pleaded guilty.  And because this plea was entered before *Rodriguez*, we are left to guess whether Mercado admitted to committing the subject felony with another gang member.  Therefore, the evidence is insufficient to prove the prior strike and serious felony conviction allegation.

Because the evidence is insufficient to prove the truth of the prior strike and serious felony conviction allegations, those findings must be reversed.  The People, however, are entitled to retry the matter.  (*Strike*,

---

[8]     Division Three noted that the elements of felony gang participation in section 186.22, subdivision (a) had not changed between the defendant's prior offense and current offense, but the judicial interpretation of those elements had evolved.  (*Strike*, *supra*, 45 Cal.App.5th at p. 146.)

*supra*, 45 Cal.App.5th at p. 154.) Accordingly, we shall reverse the prior conviction finding as to the section 186.22, subdivision (a) violation, vacate Mercado's sentence, and remand for retrial of the prior conviction allegations and resentencing.

> ### 2. Assembly Bill 333

Mercado alternatively contends the true findings on his prior conviction allegation based on section 186.22, subdivision (a) must be reversed for insufficient evidence and that the matter must be remanded for retrial of those allegations pursuant to recent amendments to section 186.22, per Assembly Bill 333, which went into effect after his sentencing.

"[A]ny felony offense, which would also constitute a felony violation of Section 186.22," is a strike. (§ 1192.7, subd. (c)(28).) Assembly Bill 333, which went into effect on January 1, 2022, made several changes to section 186.22. Among other things, Assembly Bill 333 " ' "narrows the definition of ' "criminal street gang" ' to 'an ongoing, organized association or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more [enumerated criminal acts], having a common name or common identifying sign or symbol, and whose members collectively engage in, or have engaged in, a pattern of criminal gang activity.' " ' " (*People v. Scott* (2023) 91 Cal.App.5th 1176, 1180, review granted Sept. 27, 2023, S280776 (*Scott*), italics omitted.)

Because Assembly Bill 333 is ameliorative, it applies retroactively "to all convictions not yet final on its effective date. [Citation.]" (*Scott*, *supra*, 91 Cal.App.5th at p. 1181, review granted.) Mercado's prior 2010 conviction for violating section 186.22, subdivision (a) has long since become final more than a decade before Assembly Bill 333 went into effect. Mercado nevertheless contends that because the judgment containing the true findings

40

on his prior strike and serious felony conviction allegations is not final, he is entitled to the retroactive benefit of Assembly Bill 333 such that his prior conviction allegations must be retried under the new version of the law. We agree with *Scott* that Assembly Bill 333 does not apply in these circumstances.

"The Three Strikes Law provides: 'Notwithstanding any other law . . .' [¶] . . . The determination of whether a prior conviction is a prior serious or violent felony conviction for purposes of this section shall be made upon the date of that prior conviction . . . ' (§ 1170.12, subd. (b)(1); accord, § 667, subd. (d)(1).) In other words, 'the Legislature intended that the qualifying status of a conviction would be fixed upon the date of the prior conviction . . . .' [Citation] This 'mean[s] that the court is presently required to look backward to see if, at the time of the conviction of the past offense, such past offense qualified as a serious or violent offense . . . ' [Citation.] It therefore does not matter if the definition of a strike has subsequently changed." (*Scott, supra,* 91 Cal.App.5th at pp. 1181–1182, review granted, italics omitted.)

Mercado's 2010 conviction for violating section 186.22, subdivision (a) "is long since final. When it became final, it was a strike. The fact that the Legislature has changed the definitions of active gang participation . . . under section 186.22 cannot change the status of [Mercado's] final [2010] conviction as a strike prior." (*Scott, supra,* 91 Cal.App.5th at p. 1184, review granted; see *People v. Gonzalez* (2024) 98 Cal.App.5th 1300, 1311, review granted Apr. 10, 2024, S286060.) Mercado's arguments to the contrary are unavailing. His claim that Assembly Bill 333 retroactively applies to his prior conviction thus fails.

## DISPOSITION

The trial court's true findings on the prior strike and serious felony allegations regarding Mercado's 2010 conviction for violating section 186.22, subdivision (a) are reversed, and Mercado's sentence is vacated. We remand the matter to the superior court for trial of the challenged prior conviction allegation only (if the People choose to retry the matter). After the retrial, the superior court is to resentence Mercado. If there is no retrial, the court is to resentence Mercado consistent with this opinion. In all other respects, the judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


CASTILLO, J.


RUBIN, J.